LEONARD H. PHILLIPS & others *vs.* HORACE CHASE,
personally and as administrator.

Essex. January 28, 1909. — March 8, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Undue Influence. Fraud. Probate Court. Evidence,* Competency, Declarations
of deceased persons, Privileged communications, Admissions by conduct. *Attorney
at Law. Practice, Civil,* Conduct of trial.

Upon issues as to the undue influence on the part of the respondent, framed for the
jury at the trial of an appeal from a decree of the Probate Court upon a petition
to that court to set aside a former decree whereby the son of the respondent by a
former wife was adopted by the woman then the respondent's wife, since deceased,
the petitioners, being the heirs and next of kin of such wife last deceased, intro-
duced evidence to show that the deceased was the beneficiary of a large amount
of property, most of which was held in trust for her benefit and on her death
for her heirs at law exclusive of her husband, that she was a nervous invalid
and that the respondent was her physician, that the respondent wished to get
possession of her money and to use it for his own purposes, that he undertook
to accomplish this by inducing her to marry him and to adopt his son, that he
first induced her to marry him and then exerted a dominating and controlling
influence over her, exercised when necessary with severity and cruelty, and con-
tinued to exert this influence until the time of her death, thereby compelling
her to adopt his son and thereafter preventing her from taking steps to avoid
the adoption. On exceptions to the admission of evidence during the trial
against the objections of the respondent, it was *held,* that the conduct of the
respondent toward his wife from the time of his first acquaintance with her,
which was four or five years before the adoption, and his conduct afterwards
through their whole married life were competent for the consideration of the
jury, also that the oral declarations of his wife and her writings relating to the
matters in dispute were admissible under R. L. c. 175, §§ 66, 67.

Where circumstantial evidence largely is relied upon to establish a contention,
many matters properly may be allowed to be introduced in evidence which
alone would be immaterial but which in connection with other evidence may be
helpful in disclosing the truth.

Upon the issue whether the husband of a woman, since deceased, exercised undue
influence in inducing her to adopt as her child his son by a former wife and
afterwards prevented her from taking steps to avoid the adoption, an attorney
at law may be allowed to testify that the deceased asked him to tell her brothers
after her death that the adoption was not her free act and deed, that it was
brought about by ill treatment, coercion and duress on the part of her husband,
and that she did not want it to stand, and to testify that the witness prepared an
affidavit for her which she signed and swore to before a notary, and a will in
which she said, " I now declare that said adoption was not made by me of my
free will and choice but was forced upon me by my husband by threats of
abandonment and I believe it was so forced upon me in order that said . . .
[the husband's son] might claim as my heir the residue under a certain trust set-

tlement," and also to testify that the affidavit contained in substance the same statement, because, *it seems,* that in such a case the reason for excluding private communications from a client to an attorney does not exist, and, at any rate, the request of the deceased that the statement made by her should be communicated to her brothers after her death contains an implied waiver of any privilege.

It is within the discretionary power of a trial judge to allow a document, which has been admitted properly as competent evidence, to be taken to the jury room.

The fact that a party to a suit causes relevant and material evidence to be excluded by insisting on his privilege to have it excluded as a private communication made to an attorney at law by a person under whom he claims, instead of waiving that privilege and allowing the evidence to be admitted, may be commented on by the counsel for the opposing party in addressing the jury as being an admission by conduct.

PETITION, filed in the Probate Court for the county of Essex on October 14, 1905, by Leonard H. Phillips and others, as the heirs and next of kin of Jeannie P. Chase, late of Swampscott, who died on September 13, 1905, praying that a decree of that court entered on April 23, 1889, whereby DeForest Woodruff Chase was made the child by adoption of Jeannie P. Chase, be revoked on the ground that it was procured by the undue influence, threats and duress of Horace Chase, the husband of Jeannie P. Chase, and was a fraud upon the court.

In the Probate Court *Harmon,* J., made a decree revoking the former decree of adoption on the ground of undue influence. Horace Chase, as the sole heir at law of DeForest Woodruff Chase, who had died after the filing of the petition, appealed. He also appealed as the administrator of the estate of DeForest Woodruff Chase. On appeal the case was tried before *Braley,* J., who submitted to a jury the following issues:

" Did Jeannie P. Chase of her own free will adopt DeForest Woodruff Chase on April 23, 1889?"

" Was she unduly influenced in the making of said adoption by Horace Chase or any other person?"

Upon the first issue the jury answered "No," and upon the second issue answered "Yes." Horace Chase, the respondent and appellant, alleged exceptions relating to the admission of evidence against his objection, raising the questions which are discussed and disposed of in the opinion.

*R. M. Morse, (J. H. Soliday* with him,) for the respondent.

*M. Storey & E. R. Thayer,* for the petitioners.

KNOWLTON, C. J. This is a petition for a revocation of a

decree of the Probate Court for the adoption of DeForest Woodruff Chase by Jeannie P. Chase, then the wife of Dr. Horace Chase. The adopted parent was nine years older than her adopted son, whose mother was the first wife of Dr. Chase. It is the contention of the petitioners that the decree of adoption was obtained by fraud upon the Probate Court, through coercion and undue influence exercised upon Jeannie P. Chase by her husband, whereby she was induced to sign and prosecute the petition for adoption. The theory of the present petitioners, upon which the trial proceeded, is that Jeannie P. Phillips, afterwards Mrs. Chase, was possessed of a large amount of property, most of which was held for her benefit by two boards of trustees, under separate trusts; that Dr. Chase desired to get possession of her money and to use it for his own purposes, in speculation in stocks and otherwise; that almost from the beginning of their acquaintance he was planning to accomplish this result, and that he "undertook to accomplish it by inducing her to marry him and to adopt his son, the adoption being a necessary step in carrying out the plan, because her property was held in trust upon such terms that he could not take it under her will or inherit it as her husband; that he was able to bring about the adoption only by undue influence, and by playing upon his wife's dread of another matrimonial scandal which she dared not face; that, through his position as physician and later as husband, he was able to exert and did exert a dominating and controlling influence over his wife, exercised when necessary with severity and cruelty, and that he continued to exert this influence until the end of their married life, and thereby prevented her from taking steps to avoid the adoption." By the terms of each of the trusts the funds held by the trustees, except the income, were not subject to disposition by her, but on her decease were to pass to her heirs at law.

These issues were submitted to the jury: "Did Jeannie P. Chase, of her own free will, adopt DeForest Woodruff Chase on April 23, 1889?"

"Was she unduly influenced in the making of said adoption by Horace Chase, or any other person?"

To the first question they answered "No" and to the second they answered "Yes." Their verdict, which was in accordance

with the finding of the Probate Court, was well warranted by the testimony, and there was ample evidence to sustain the theory, stated above, on which the petitioners' case was presented.

On the other hand, Dr. Chase, who had become the respondent as administrator of the estate of his son, DeForest W. Chase, who deceased after the petition was brought, testified at great length, and while a great deal was elicited from his testimony in cross-examination which tended strongly to support the theory of the petitioners, he said, in substance, that, apart from certain times when his wife was irresponsible and almost frenzied from a peculiar physical condition, they were happy together; that his conduct toward her through all the years of their married life was that of a devoted husband; that he married her only because he loved her; that his determination to marry her was not in the least affected by the fact that she had property; that never during his married life did he give his wife cause to say to him an unkind word; that, apart from occasions when she was more or less in a frenzied condition from her physical sufferings, their relations were always pleasant.

Early in the trial, upon a conference between the presiding justice and the counsel, it became manifest that the respondent was likely to argue to the jury that the failure of Mrs. Chase to commence proceedings to obtain a revocation of the decree of adoption was strong evidence in contradiction of the claim of the petitioners. The relations of the husband and wife and their conduct toward each other through their whole acquaintance became important, as bearing upon the truth of the conflicting theories of the respective parties. Upon the petitioners' theory, marriage was only a part of Dr. Chase's general plan to get the benefit of Mrs. Chase's property. The plan and purpose continued as long as his wife lived, and an important part of it was to prevent her from taking proceedings to set aside the decree of adoption, and from furnishing evidence which might at some time be used by herself or others to thwart him in his purpose. Under these circumstances the conduct of Dr. Chase towards Mrs. Chase, from the time of his first acquaintance with her, which was four or five years before the adoption, and his conduct afterwards, through their whole married life, were competent for the consideration of the jury. The oral declarations of

his wife and her writings touching the matters in dispute were competent under the R. L. c. 175, §§ 66, 67. She having deceased, a wide latitude in the cross-examination of Dr. Chase was properly open in the discretion of the court.

The respondent excepted to the general course of the trial in these particulars, and the only exceptions in the case relate to the admission of evidence. We think it will serve no useful purpose to deal with the particulars of the very voluminous testimony, or with the special matters to which the respondent excepted as irrelevant. We have already intimated that the general course of the trial in these particulars was correct. When circumstantial evidence is largely relied upon to establish an issue, it is inevitable that many matters should be introduced which by themselves alone would be immaterial, although in connection with other evidence they may be helpful in discovering the truth. After a careful reading of all the evidence, we are of opinion that the respondent has shown no error in the admission of testimony.

An interesting question is raised by the respondent on the admission of the testimony of Mr. Chick, at one time an attorney of Mrs. Chase, in regard to an affidavit and will made by him for her, and certain communications, relative to the adoption, to be made by him to her brothers on her behalf, after her death. He testified, among other things, that she told him to " tell her brothers that this adoption was not her own free act and deed, that it was brought about by ill treatment and coercion, duress, on the part of her husband, and that she did not want it to stand." He prepared an affidavit for her which she signed and swore to before a notary, and a will in which she said, " I now declare that said adoption was not made by me of my free will and choice but was forced upon me by my husband by threats of abandonment and I believe it was so forced upon me in order that said DeForest W. Chase might claim as my heir the residue under a certain trust settlement," etc. The statement in the affidavit was the same in substance as that in the will. It is the contention of the respondent that this evidence should have been excluded as a private communication from a client to an attorney.

It has been repeatedly held that this rule of privilege should be construed strictly. *Foster* v. *Hall*, 12 Pick. 89, 98. *Hatton* v. *Robinson*, 14 Pick. 416, 422. It is for the protection and benefit of the client, so that his disclosures may not be used against him in controversies with third persons. He may waive it, and if there is a controversy after his death between his estate and those claiming adversely to it, the privilege may be waived by his executor or administrator, (*Brooks* v. *Holden*, 175 Mass. 137,) or by his heirs (*Fossler* v. *Schriber*, 38 Ill. 172) ; but where the controversy is not between an estate and persons claiming against it, but is to determine who shall take by succession the property of a deceased person, and both parties claim under him, the reason for the privilege does not exist, and neither can set up a claim of privilege against the other. *Doherty* v. *O'Callaghan*, 157 Mass. 90. *Russell* v. *Jackson*, 9 Hare, 387. *Blackburn* v. *Crawfords*, 3 Wall. 175, 192, 194. *Glover* v. *Patten*, 165 U. S. 394, 406. See also, as tending to establish the same proposition, *Layman's Will*, 40 Minn. 371 ; *Coates* v. *Semper*, 82 Minn. 460 ; *Kern* v. *Kern*, 154 Ind. 29 ; *O'Brien* v. *Spalding*, 102 Ga. 490 ; *Scott* v. *Harris*, 113 Ill. 447, 454 ; *Thompson* v. *Ish*, 99 Mo. 160, 175.

There was also a special reason for the admission of this evidence, because there was an implied waiver of any privilege of Mrs. Chase in her request that the fact should be communicated to her brothers after her death. *Scott* v. *Harris*, 113 Ill. 447. *Bruce* v. *Osgood*, 113 Ind. 360. *Ferguson* v. *McBean*, 91 Cal. 63, 73. *Blackburn* v. *Crawfords*, 3 Wall. 175, 194. *Winters* v. *Winters*, 102 Iowa, 53, 57, 59. This evidence was rightly admitted.

There was no error in allowing the paper * used in evidence to go to the jury room. *Boston Dairy Co.* v. *Mulliken*, 175 Mass. 447. *Krauss* v. *Cope*, 180 Mass. 22.

The petitioners called Mr. Niles, a leading member of the bar, to testify that Mrs. Chase consulted him professionally in 1904. They then offered to prove that she made statements to him about the adoption, and that a paper was prepared by him, read

---

* The paper was a copy of the will referred to in the testimony of Mr. Chick, which he testified was made by Mrs. Chase.

to Mrs. Chase and approved by her. After a statement to the presiding justice, out of the hearing of the jury, of what the contents of the paper were, the testimony and its contents were excluded on the ground that it was a privileged communication to counsel. In his closing argument the petitioners' counsel commented on the respondent's course in claiming this privilege. The counsel of the respondent objected that this was improper, and upon the court's overruling his objection, took exception.

It is a rule of law that the objection of a party to evidence as incompetent and immaterial, and insistence upon his right to have his case tried according to the rules of law, cannot be made a subject of comment in argument. *Commonwealth* v. *Coughlin*, 182 Mass. 558. *Minihan* v. *Boston Elevated Railway*, 197 Mass. 367. On the other hand, if evidence is material and competent except for a personal privilege of one of the parties to have it excluded under the law, his claim of the privilege may be referred to in argument and considered by the jury, as indicating his opinion that the evidence, if received, would be prejudicial to him. This is the rule where the party declines to answer a question on the ground that his answer may tend to criminate him. *Andrews* v. *Frye*, 104 Mass. 234, 236. *Commonwealth* v. *Smith*, 163 Mass. 411. So too, in the absence of a statutory provision to the contrary, where the party charged with a crime, who has a legal right to testify in his own behalf, fails to take the witness stand. *State* v. *Bartlett*, 55 Maine, 200. *Parker* v. *State*, 32 Vroom, 308. *Kops* v. *Regina*, [1894] A. C. 650. *Regina* v. *Rhodes*, [1899] 1 Q. B. 77. The principle was applied by this court, in a case like the present, in *McCooe* v. *Dighton, Somerset & Swansea Street Railway*, 173 Mass. 117.

The respondent and the petitioners both claimed under Mrs. Chase in a proceeding to determine the right of succession to her estate. The privilege to have the testimony excluded was originally her own, which she might waive. The petitioners, for themselves, waived the privilege and offered the evidence. The respondent claimed the privilege and refused to waive it. In reference to the matter in controversy, these two parties were the sole representatives of her right. This conduct on the part of the respondent was a proper subject of comment in argument.

*Exceptions overruled.*