LEONARD H. PHILLIPS & others *vs.* HORACE CHASE, administrator.

Essex. November 3, 1909. — November 23, 1909.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Adoption. Undue Influence. Fraud. Probate Court,* Revocation of decree, Appeal, Objections to decree.

Upon an appeal from a decree, which was made by a judge of the Probate Court and revoked a former decree made by him for the adoption by a married woman of a son of her husband by his former wife on the ground that the petition for adoption and the decree entered thereon were procured by the undue influence of the woman's husband and were a fraud upon that court, a jury found upon an issue presented to them that the woman did not adopt her husband's son " of her own free will," and upon the issue " Was she unduly influenced in the making of said adoption by her [husband] or any other person ? " answered " Yes." There was nothing in the evidence showing undue influence of any person other than the husband. The record before this court did not disclose what instructions were given to the jury in submitting this issue to them. *Held,* that the finding of the jury, in the light of the evidence on which it was founded, must be taken to be a finding, as if upon an issue framed in the usual form, that the adoption was procured by the undue influence of the woman's husband ; and that, in the absence of a statement of the instructions to the jury, they must be taken to have been, in accordance with the established law, that, to find that the husband exercised undue influence upon his wife in procuring the adoption of his son by her, the jury must find that he so far dominated her will as to substitute his will for hers with the result that the adoption was not in reality the act of his wife but his act, and that, there having been evidence warranting such a finding, the findings of the jury on the two issues showed a fraud upon the court in procuring the former decree, which justified its revocation.

Upon an appeal from a decree, which was made by a judge of the Probate Court and revoked a former decree made by him for the adoption by a married woman of a son of her husband by his former wife on the ground that the petition for adoption and the decree entered thereon were procured by the undue influence of the woman's husband and were a fraud upon the court, a jury found upon issues presented to them that the woman did not adopt her husband's son of her own free will and that the adoption was procured by the undue influence of the woman's husband. At the trial of these issues the appellant did not ask for a ruling that the evidence did not warrant a finding that the adoption was procured by undue influence, nor did he except to the instructions of the trial justice under which the jury were allowed to find that the adoption was so procured. Later, upon an appeal from a final decree made by a single justice, affirming the decree of revocation of the Probate Court, the appellant sought to raise the point that the evidence did not warrant a finding that undue influence was exercised upon the woman by her husband. All the evidence which was before the jury was before this court and warranted a

finding that the woman's mind had been overpowered by her husband, and it was *held*, that, even if the appellant had the right to raise the question, which was doubted,. the evidence warranted a finding that the adoption was procured by undue influence.'

Upon the question whether an act was procured by the undue influence of another person, if it appears that the mind of the person acting was overpowered by the other person so that the act in question was that of the dominating person, it does not matter how the domination over the mind of the person acting was acquired; if it was acquired and was exercised, that is enough to constitute undue influence.

If a man so dominates his wife's will as to force her against her will to bring a petition in court for the adoption by her of his son by a former wife, and procures a decree for such adoption, he commits a gross fraud upon his wife and such a fraud upon the court that upon the presentation of a proper case the decree will be set aside.

The statement of objections to a decree of a Probate Court, which by R. L. c. 162, § 10, is required to be filed with an appeal to the Supreme Judicial Court, is sufficient if it indicates clearly the questions intended to be raised.

An objection to a decree of the Probate Court for a petitioner, contained in a statement of objections under R. L. c. 162, § 10, upon an appeal from such decree to the Supreme Judicial Court by the respondent to the petition, " Because said decree was against the evidence and the law," gives the appellee notice that the appellant contends that the facts do not entitle the petitioner to any relief, and enables the appellant to raise this question.

Upon an appeal from a decree of the Probate Court revoking a former decree of that court for the adoption by a married woman of a son of her husband by a former wife, it appeared that the former decree was procured by the undue influence of the husband who so dominated his wife's will as to force her to bring the petition and obtain the decree of adoption against her will, and that he procured the adoption in order to secure his wife's property for his son, thinking that if his son got the property he himself would benefit thereby. The single justice who heard the appeal found that the husband had committed a fraud upon the court, and made a decree affirming the decree of revocation of the Probate Court. The petition for the revocation of the decree of adoption was filed, upon the death of the wife, by those who but for the adoption would have been her heirs and next of kin. The son of the husband, who was the subject of the adoption, accepted service of the petition and gave his deposition, and, before the hearing of the case, died unmarried and intestate. It did not appear that he left any creditors. The husband, as the sole heir and next of kin of his son and as the administrator of his son's estate, appealed from the decree of revocation made by the Probate Court and from the decree made by the single justice. It was contended by the appellant that the decree of adoption could not be set aside after the death of both parties to it, that no fraud was committed by the son adopted, and that the appellant claimed only through his son and represented his son's rights. *Held*, that this court would regard the situation of the parties at the time that the decree of revocation was made, when by the death of the son intestate the father had become entitled to all his property, and that the law will not allow a man to profit by his own wrongdoing, the only way to prevent this in the present case being to revoke the decree of adoption at a time when no reason existed why that should not be done; therefore, that the decree of revocation should be affirmed.

In a case which comes to this court on an appeal from a decree of a single justice affirming on appeal a decree of the Probate Court, only those questions are open which appear in the statement of the objections to the decree of the Probate Court filed under R. L. c. 162, § 10, upon the entry of the appeal in the Supreme Judicial Court. In the present case, the contentions thus excluded were shown by the record before the court to be without merit.

LORING, J.    On April 23, 1889, the judge of the Probate Court for the County of Essex made a decree after hearing, by which De Forest Woodruff Chase, son of her husband by a former wife, became the adopted son of Mrs. Chase.    Mrs. Chase died on September 13, 1905.    A month later (on October 14, 1905,) a petition was filed by those who but for the adoption would have been her next of kin, to set aside the decree of adoption. On October 20, 1905, De Forest Woodruff Chase voluntarily accepted service.    He gave his deposition on November 10, in the presence of the judge of probate who entered the original decree of adoption, and died on December 19, 1905.*    The same judge, after hearing, found that the petition for adoption and the decree entered thereon "were procured by the undue influence of her husband, the said Horace Chase, and were a fraud upon said court," and entered a decree revoking the decree of adoption.    This was on February 19, 1906.    On March 8, 1906, Horace Chase took two appeals from this decree, one as sole heir of Woodruff, adopted son and interested in the estate of Mrs. Chase, and the other as administrator of the estate of Woodruff, adopted son and interested in Mrs. Chase's estate.

The appellant filed five objections to the decree of the Probate Court.

On his motion the following issues were tried by a jury: "1.  Did Jeannie P. Chase of her own free will adopt De Forest Woodruff Chase on April 23, 1889 ?    2.  Was she unduly influenced in the making of said adoption by Horace Chase or any other person ? "

On the first issue the jury answered "no," and on the second, "yes."

---

* De Forest Woodruff Chase was born on May 27, 1867; so that he was nearly twenty-two years of age at the time of the adoption, and was more than thirty-eight years of age when he died, intestate and unmarried.

After these issues had been tried the appeal came on for hearing before the Chief Justice of this court on the other issues involved in it. The appellant introduced in evidence the evidence taken before the jury. No other evidence was offered by either party. The Chief Justice, on the answers made by the jury and on the evidence introduced before him, found for the appellees and entered a decree affirming the decree of the Probate Court revoking the decree of adoption. The case is before us on an appeal from that decree.*

1. The first question raised is that covered by the fifth objection filed by the appellant, to wit: "The procuring of said adoption did not constitute a fraud upon said court."

We are of opinion that the answers given by the jury on the two issues tried by them settle that question in the affirmative.

The second of the two issues settled by the verdict of the jury

---

* The two issues quoted on page 558 were tried before *Braley*, J. Besides these issues there were two other issues which were presented to that justice, one of them, then numbered 2, "Was Jeannie P. Chase at the time of said adoption of sound mind and of full legal capacity?" and the other, numbered 4, "Was said decree of adoption procured in such ways and under such circumstances as to make it a fraud upon the court?" Upon a motion of the appellant, the justice made an order discharging these issues. The two issues quoted in the opinion were tried to the jury, and exceptions taken at that trial by the appellant, relating to the admission of evidence against his objection, were overruled by this court in a decision reported in 201 Mass. 444.

The final decree, made by *Knowlton*, C. J., on June 28, 1909, from which the present appeal was taken, after stating the issues which are quoted in the opinion, proceeded as follows: "And the jury having answered 'no' to said first issue and 'yes' to said second issue and exceptions taken at the trial of said issues by the respondent having been overruled by the full court and the petitioners having thereafter moved that the decree of the Probate Court be affirmed and the parties having agreed that upon the hearing of said motion all the evidence taken at the trial of said jury issues so far as the same was material in the determination of the questions raised by said motion might be considered by the court and now upon consideration thereof

"It is ordered, adjudged and decreed that the decree of the Probate Court made March 13th 1906 revoking a decree of said Court made April 23, 1889 by which it was decreed that DeForest Woodruff Chase should thereafter be the child by adoption of said Jeannie P. Chase be and the same hereby is affirmed and this case is remitted to the Probate Court for further proceedings in accordance with this decree."

in the case at bar is not in the usual form. But we are of opinion that the verdict must be taken to be tantamount to a finding on an issue in the usual form, and to mean : That the adoption was procured by the undue influence of Horace Chase or of some other person ; and we are further of opinion that we ought to construe it in the light of the evidence on which (as appears from the evidence at the later hearing) it was founded. So construed it must be taken to be a finding that the adoption was procured by the undue influence of Horace Chase. There is nothing in that evidence showing undue influence by any other person.

Undue influence in procuring another to adopt his child means the same thing as undue influence in procuring another to make a will, for example, in favor of his child. It is established that that means that the person exercising the influence so far dominated the will of the other person as to substitute his will for that of the other person with the result that the action brought about by the undue influence is not in reality the act of the person whose act it is in form, but the act of the person exercising the undue influence. *Shailer* v. *Bumstead*, 99 Mass. 112. *Woodbury* v. *Woodbury*, 141 Mass. 329.

The appellant has argued that the finding of the jury in the case at bar should not be taken to be a finding of undue influence in that sense of the term. But the record does not disclose what the instructions were under which the jury made their finding on this issue. The instructions given to the jury should have been those stated above, and in the absence of the charge actually given must be taken to have been so.

The appellant now seeks to raise the further point that the evidence did not warrant a finding that there was undue influence on the part of Dr. Chase, if that is what undue influence means.

It is not clear that this argument does not come too late. The proper time for raising that question was at the trial of the issue by asking for a ruling that the evidence did not warrant a finding that the adoption was procured by undue influence, or by an exception to the instructions under which the jury were allowed to find that it was. No such question was then raised. See *Phillips* v. *Chase*, 201 Mass. 444. But all the evidence

before the jury is before us and (without intimating that the appellant has a right to raise the question now) we prefer to put our decision on the ground that the evidence did warrant the finding, giving to it the meaning that we have held must be given to it.

The principal argument of the appellant on this point is that: " Mrs. Chase stated to her brother that the doctor gave her a week to decide whether she should adopt his son or have him leave her (Evidence of Leonard Phillips, page 152), and on Mrs. Chase's fear of a possible scandal arising out of the separation, the whole claim of the petitioner is based. But this was merely an appeal to motives, and an appeal to motives does not constitute duress." " Duress must overpower the mind, not merely influence the choice."

Undue influence must overpower the mind, and in our opinion the evidence in the case at bar warranted a finding that Mrs. Chase's mind had been overpowered by her husband. What is true of duress is true of undue influence, namely, it is of no consequence how the domination over the mind was acquired; it is enough that it was acquired. *Silsbee* v. *Webber*, 171 Mass. 378. If the evidence in the case at bar had shown nothing more than the presentation by one person to another of a choice between two courses of action the jury would not have been warranted in finding that the adoption was procured by undue influence. But the evidence in the case at bar was not merely that. The marriage between Dr. Chase and Mrs. Chase took place on January 26, 1889, and the adoption on April 23 of the same year. Dr. Chase made the acquaintance of the woman who afterward became his wife, in 1884 or 1885. She was then Mrs. Culliton, and came to him as a patient. By his own account she was then in a very pitiful condition, a physical wreck, anæmic and unable to walk more than a short distance without fatigue, or to read without her eyes paining her. There was another trouble which need not be mentioned. He did much to relieve her, and in six months she had greatly improved. She remained under his care as a physician continuously thereafter, and in his own words : " There never was a day as I lived with her, that I didn't have a suggestion to make for her physical benefit." She obtained a decree of divorce *nisi* from her first husband in December, 1887, and this

was made absolute in June, 1888. It turned out that Culliton had married her from mercenary motives only, and in another way the marriage and the reason for her leaving her husband made her peculiarly sensitive about it. It was also in evidence that Mrs. Chase, as she afterward became, looked upon it as a scandal so humiliating to her that she could not endure a similar one. The jury were warranted in finding that this was so, that Dr. Chase knew it, and, to force her to adopt his son, told her within three months after the marriage that if she did not do so he would desert her. There was no pretense that the adoption was made by reason of any affection which she then bore to Woodruff. Their acquaintance up to that time was casual only. Woodruff testified that he was asked to come to Swampscott and that he did so; that he was then asked to go to Salem with Dr. and Mrs. Chase, and while on the train to Salem he learned for the first time that the reason why he had been summoned to Swampscott and was going to Salem was to be adopted by Mrs. Chase. He was asked if he had any objections. " I told her no, that if I could be of any service I should be glad. She said that owing to certain conditions in her mother's will and certain conditions that the trust fund had been left in she wanted to have it so that she could leave her money as she wished to and she found that she could not do so without adopting some lawful heir.* That she wished that her money should go to my father and to me." And Dr. Chase himself testified that the reason Mrs. Chase gave for the adoption was to protect him: " If my son had it I presume my son would be kind enough if I needed it to share with me." In addition there was evidence that Mrs. Chase frequently spoke in later years of the

---

* A small portion of the property of which Mrs. Chase was the beneficiary for life was held in trust under the will of her mother, which provided that on the daughter's death without issue the trust fund held for her benefit should go to the surviving children of the testatrix and their heirs. The principal part of the property of which Mrs. Chase enjoyed the income during her life was held by the trustees under a deed of trust made by her and her former husband, William H. Culliton, by which it was provided that at her death the trustees should " convey, transfer and deliver the whole of the trust property to her heirs at law," subject to a certain provision for William H. Culliton if he should survive her. Mrs. Chase after her marriage to Dr. Chase tried unsuccessfully to revoke this trust.

adoption " bitterly," that she said that she had been forced to do it against her will, and when her husband left for a time at a later date she tried to kill herself and finally asked him to come back on his own terms. This case therefore could be found not to be a case where one at arm's length gives another a choice of action. Dr. Chase stood in the twofold confidential relation of physician and husband ; Mrs. Chase, though better, was not well; and the jury were warranted in finding that to his knowledge she was not willing to submit to a second scandal arising out of marriage, and that she at many times said that she was forced against her will to adopt Woodruff as her son. The evidence was conflicting, and the jury could have taken a different view of the case. But the evidence authorized a finding that the adoption was procured by undue influence, and that view of it was taken by the jury.

We are of opinion that if one so dominates his wife's will as to force her against her will to bring a petition in court for the adoption by her of his son by a former wife, he commits a gross fraud upon his wife and such a fraud upon the court that the decree of adoption should be set aside in a proper case. For that proposition no authorities are necessary.

2. The next contention of the appellant is that on the facts found by the jury and on any facts which could have been found on the evidence before the Chief Justice, the decree of adoption cannot be set aside. This contention is based on the fact that the fraud was not committed by Woodruff Chase, the other party to the petition for adoption, that the wrong done was a wrong done to Mrs. Chase, not to her next of kin, that the status created by the adoption cannot, or at any rate will not, be changed after the death of both parties to it, and that Dr. Chase in defending the petition for revocation is defending in the right of his son and consequently that the petition must be disposed of as it would be disposed of if Woodruff Chase were alive and defending the petition.

The appellees have argued that these objections, not having been specified by the appellant as objections to the decree, are not now open to him.

Where an appeal is taken to the Supreme Judicial Court from a decree of the Probate Court, the case involved in that

decree is heard *de novo* in the appellate court. Ordinarily no answer is filed in the Probate Court by the respondent. In cases where the appeal is taken by him, the objections to the decree appealed from serve the same purpose as an answer; and in all cases the purpose of R. L. c. 162, § 10, is to give notice to the other party of the issues which the appellant intends to raise. Objections to an appeal required by R. L. c. 162, § 10, are not like assignments of errors under the eleventh rule of the United States Circuit Court of Appeals, which requires the appellant with his petition for a writ of error or appeal to file "an assignment of errors which shall set out separately and particularly each error asserted and intended to be urged." For that reason *Oswego Township* v. *Travelers' Ins. Co.* 70 Fed. Rep. 225, and the other cases in Circuit Courts of Appeal of the United States cited by the defendant are not applicable here; the other cases cited by the appellees seem to be decisions under similar requirements. The rule of construction to be applied in case of objections to an act appealed from under R. L. c. 162, § 10, was laid down in *Codwise* v. *Livermore*, 194 Mass. 445.

An objection by a respondent that the decree appealed from is against the law gives the appellee notice that at least the appellant contends that the facts do not entitle the petitioner to any relief, and we are of opinion that the first objection * in the case at bar entitles the appellant to raise the question which would be open under a general demurrer, to wit, is the petitioner entitled on all the facts to any relief?

The issues involved in this cause were greatly simplified by the death of Woodruff Chase. On the evidence it hardly could have been found as a fact that he was a party or even privy to the fraud committed upon Mrs. Chase by his father. Had he lived he could have invoked with great force (as his father has

---

* The objections to the decree of the Probate Court stated by the appellee were as follows:

" 1. Because said decree was against the evidence and the law. 2. Because said adoption was legally and properly made. 3. Because Jeannie P. Chase was at the time of said adoption of full age and sound mind. 4. Because said Jeannie P. Chase was not unduly influenced by any one in making said adoption. 5. Because the procuring of said adoption did not constitute a fraud upon said court."

attempted to do in the case at bar) the doctrine of *Fairbanks* v. *Snow*, 145 Mass. 153. The doctrine of *Fairbanks* v. *Snow* is that where one party to a contract is forced to enter into it through duress exercised upon him by a stranger to it, no ground for its avoidance is made out as against the other party to the contract who was not privy to the duress.

Dr. Chase was required by R. L. c. 154, § 1, to join with his wife in the petition for the adoption of his son by a former wife, and he in fact did join with her in that petition. Dr. Chase and his wife were the parties on one side of the petition and Woodruff Chase was the party on the other side of the petition. The undue influence was exercised by one petitioner on the other petitioner, not by one party to the petition on the other party to it.

The rule of *Fairbanks* v. *Snow* does not apply in all cases where a fraud has been committed on a court. There are cases where a court will set aside a decree or judgment made by it because of a fraud practised upon it by a stranger, that is to say, a person who is not a party to the cause in question and who is not acting with the privity or consent of one of the parties to it. The bribery of one of the jury which rendered the verdict on which a decree or judgment is founded is doubtless an example. Such a case was before this court in *Crocker* v. *Crocker*, 198 Mass. 401.

But we do not find it necessary to consider these questions in deciding the case at bar. On the death of Woodruff Chase without leaving a will his father became entitled to all his property. There is no evidence that he left any creditors. It follows that his father alone became entitled thereto. It was established by the answers given by the jury on the issues tried by them that the adoption of his son Woodruff was procured by a gross fraud practised by Dr. Chase upon his wife and upon the court.

The law will not allow a man to profit by his own wrong-doing. Adopting and adapting the words of Mr. Justice Field in *New York Ins. Co.* v. *Armstrong*, 117 U. S. 591, 600: " It would be a reproach to the jurisprudence of the country " if the law did allow that.

It is settled that the English common law is not open to

that reproach.   It has been twice laid down in Great Britain, once by Lord King in *Bovey* v. *Smith,* 1 Vern. 60, and once by Lord Redesdale in *Kennedy* v. *Daly,* 1 Sch. & Lef. 355, 379, that one who obtains property by a breach of trust and afterwards buys it from a *bona fide* purchaser for value does not get a good title to it although every one else in the world buying under those circumstances would get the title of the *bona fide* purchaser for value.   And that has been decided in New York; *Clark* v. *McNeal,* 114 N. Y. 287; and in Maine; *Bailey* v. *Bailey,* 61 Maine, 361.   The same principle was applied in *New York Ins. Co.* v. *Armstrong,* 117 U. S. 591, where the holder of a valid policy on the life of another murdered him to secure immediate payment (see also *Burt* v. *Union Central Ins. Co.* 187 U. S. 362, 365, where the court says that " the maturity of which [the policy] was accelerated by his execution for crime "); and in *Riggs* v. *Palmer,* 115 N. Y. 506, where the beneficiary under an existing will of his grandfather murdered him to prevent a revocation of the will and to secure the share of his property thereby given to him.   It is true that in *New York Ins. Co.* v. *Armstrong* and in *Riggs* v. *Palmer,* the murders were committed for the direct purpose of securing in the one case money and in the other property, and that could not be found to be the case here.   It could not be found here that the respondent in the case at bar procured the adoption of his son by Mrs. Chase because he expected to outlive them both.   But that element did not exist in the cases where it has been laid down or held that one who has possessed himself of property through a breach of trust cannot set up the title of a *bona fide* purchaser for value which he has subsequently acquired.

It is not necessary in the case at bar to go so far as the court went in those cases, for it is plain that the appellant here procured the adoption in order to secure his wife's property for his son, thinking that if his son got the property he would benefit thereby.   That is enough to bring the case within this doctrine if it is not enough that the adoption was procured through his fraud and the property has now come to him.

Where the fraud committed by a defendant entitles him without disentitling the plaintiff, the proper remedy is a bill in equity to prevent him from taking or from retaining property to which

he is entitled by or under the decree procured by his fraud. That was the remedy employed in *Riggs* v. *Palmer*, 115 N. Y. 506, where (as we have said) the legatee murdered the testator to prevent a revocation of the will and to secure immediately the legacy thereby given to him.

But the peculiarity of the case at bar and of the case before this court in *Tucker* v. *Fisk*, 154 Mass. 574, is and was that the decree which entitled the respondent disentitled the petitioners. See *McKay* v. *Kean*, 167 Mass. 524. If the adoption of Woodruff as Mrs. Chase's son is not set aside, the petitioners are not entitled to her property as her next of kin. Under those circumstances no relief can be given unless the decree of adoption is set aside. If a decree of adoption is ever to be set aside to prevent a person taking or keeping property obtained through his own fraud, it can be properly done when (as in the case at bar) the adoption was originally made not for the personal relations thereby created but for its effect upon property, where both parties to it are dead, and where the only person entitled to property by force of it is the person who committed the fraud.

Under the facts existing when the decree of revocation in this case was made, the petition for revocation here in question could be treated as a petition founded on the principle that a wrongdoer will not be allowed to profit by his own fraud; that the only way of preventing the fraud was to revoke the decree of adoption and that there were no reasons then existing why that should not be done.

For cases where it was decided or laid down that a decree of adoption or divorce will be revoked to prevent such a fraud, (or, as it is usually put, where property interests are involved,) even after the death of one or both the parties to it, see *Tucker* v. *Fisk*, 152 Mass. 574 ; *Fiske* v. *Pratt*, 157 Mass. 83 ; *McKay* v. *Kean*, 167 Mass. 524 ; *Collamore* v. *Learned*, 171 Mass. 99 ; *Lawrence* v. *Nelson*, 113 Iowa, 277 ; *Wood* v. *Wood*, 136 Iowa, 128 ; *Boyd's Appeal*, 38 Penn. St. 241 ; *Fidelity Ins. Co.'s Appeal*, 93 Penn. St. 242 ; *Brown* v. *Grove*, 116 Ind. 84 ; *Johnson* v. *Colman*, 23 Wis. 453; *Bomsta* v. *Johnson*, 38 Minn. 230 ; *Daniels* v. *Benedict*, 50 Fed. Rep. 347; *Rodgers* v. *Nichols*, 15 Okla. 579.

3. The appellant's next contention is that the adoption was

ratified by Mrs. Chase, who lived for more than fourteen years after the date of the decree.

But no objection to the decree of the Probate Court on that ground was filed by the appellant. In trying the questions remaining to be tried by the court after it was established by the jury that the adoption was procured by the undue influence of the appellant, the appellees had a right to proceed on the footing that under the objections filed by the appellant no issue of fact of that kind was to be raised. And proceeding on that footing there was no occasion for them to put in evidence bearing on that issue. The record in this case affords ground for the belief that under the rule laid down in *Phillips* v. *Chase*, 201 Mass. 444, there were two witnesses who could have testified in support of the appellees' case on that issue, but whose testimony was not put in evidence. The underlying question of fact to be decided in the case at bar was whether credit should or should not be given to the color which Dr. Chase gave in his testimony to the incidents of his life with Mrs. Chase. If credit was not given to his testimony, it is not likely that he could have hoped to succeed in persuading the court that his wife who died a suicide ever succeeded in escaping from the domination which the jury found he had over her at the time of the adoption. We speak of this because it is apparent that the appellant has not lost anything by his failure to file an objection on this ground.

4. The defenses of laches and of the statute of limitations are not open to the appellant. No objection to the decree of the Probate Court on those grounds was filed. But when the true ground on which relief is given in this class of cases is considered, it is apparent that there is nothing in these contentions of the appellant. The same is true of the constitutional point raised by him.*

*Decree affirmed.*

*R. M. Morse,* (*J. H. Soliday & R. Y. FitzGerald* with him,) for the respondent.

*M. Storey & E. R. Thayer,* for the petitioners.

---

* The contention referred to was that the proceeding was not " due process of law" under the fourteenth amendment of the Constitution of the United States.