HORACE CHASE vs. LEONARD H. PHILLIPS & others, trustees.

Suffolk.    December 2, 1910. — March 3, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction, Res judicata. Res Judicata. Trust. Fraud. Husband and Wife. Words, "Died unmarried."*

The determination, in a suit by the heirs of a certain woman against her husband seeking to annul for fraud the adoption by the woman of her husband's son by a former marriage, of the question, whether the adoption was procured by fraud and was void, by a final decree so declaring, renders that question *res judicata* in a suit by the husband on his own behalf and as administrator of his son's estate against trustees who held property for the benefit of the heirs of the woman, in which the plaintiff contends that he is entitled to the property because the adoption was not void.

If a married woman conveys certain property to trustees, directing among other things that on her death the property should be divided "precisely as if" she "had then died unmarried, intestate and possessed of said property in her own right," and four years later procures a divorce from her husband and a year later marries again, such conveyance is not void as in fraud of the second husband's marital rights.

A married woman conveyed certain property to trustees by a deed which contained, among directions as to the disposition of the property upon her death, the fol-

lowing : " it being distinctly understood that [her husband] is not to be included among her heirs-at-law, and that neither he nor his legal representatives are to receive upon [her] death any portion of said trust property, which upon her death is to be divided precisely as if [she] had then died unmarried, intestate and possessed of said property in her own right." Four years after the conveyance she procured a divorce and a year later married another man, who, upon her death, claimed a right under the trust as an heir at law, contending that the words " died unmarried," should be construed to mean " died unmarried to her first husband." *Held*, that the words should be given their natural meaning and that therefore the second husband had no rights in the trust fund.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 24, 1910, by Horace Chase individually and as administrator of the estate of De Forest Woodruff Chase against the trustees under the " Culliton Trust" and under the " Phillips Trust," so called.

The allegations of the bill in substance were as follows :

In 1884 Jeannie P. Culliton and her husband, William H. Culliton, conveyed certain real and personal property to the defendants and Daniel K. Phillips (since deceased) in trust, one provision of the trust (called the " Culliton Trust ") directing the trustees, on the death of Jeannie P. Culliton, " to convey, transfer and deliver the whole of the trust property to her heirs at law, providing, however, that if the said William H. Culliton shall survive her, so much of the property described in [a designated] schedule as shall be amply sufficient to secure said annual income of eighteen hundred dollars, and not less in any event than sixty thousand dollars shall be retained by said trustees during his life, and upon his death the property so retained shall be conveyed, transferred and delivered to the same persons who received the residue of the property distributed at the death of said Jeannie P. Culliton, and in the same proportion ; it being distinctly understood that the said William H. Culliton is not to be included among her heirs-at-law, and that neither he nor his legal representatives are to receive upon the death of said Jeannie P. Culliton any portion of said trust property, which upon her death is to be divided precisely as if the said Jeannie P. Culliton had then died unmarried, intestate and possessed of said property in her own right, first, however, deducting the proper expenses and charges of the trustees upon such termination of the trust."

The " Phillips Trust " was a trust under the will of the mother of Jeannie P. Culliton (afterwards Jeannie P. Chase) and con-

tained a provision that, as the children of the testatrix died, the trustees should give the property, as to each child, " to his or her lawful issue upon their arriving at the full age of twenty one years, and in the event of the death of any of my said children, without lawful issue living, or if living, and not arriving at the full age of twenty one years," to testatrix's other children.

In 1888 Jeannie P. Culliton obtained a divorce and in 1889 married the plaintiff and in the same year a joint petition of herself and the plaintiff for the adoption of DeForest Woodruff Chase was granted. Jeannie P. Chase died on September 13, 1905, leaving no children unless DeForest Woodruff Chase was such. DeForest Woodruff Chase died on December 19 of the same year.

The plaintiff demanded of the defendants that they turn the property held by them under both trusts over to him, and they refused.

The allegations of the tenth paragraph of the bill were that, on petition of those, " who but for said adoption would have been heirs and next of kin of Jeannie P. Chase, to revoke said decree of adoption, and on February 19, 1906, a decree purporting to revoke said decree of adoption was made by said Probate Court; that on appeal to a single justice of this court said decree was on June 28, 1909, affirmed; and that on November 23, 1909, on appeal to the full court, said decree was affirmed."

The allegations of the eleventh paragraph were that " when said decree purporting to revoke said decree of adoption was made both Jeannie P. Chase and DeForest Woodruff Chase were dead, and therefore said decree of revocation and said decrees affirming the same were made without jurisdiction in said courts and were null and void and of no effect and not due process of law within the meaning of the Fourteenth Amendment of the Constitution of the United States, and should be disregarded; and said decrees, if regarded and given effect according to their tenor, would deprive the complainant of his property without due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States."

The prayers of the bill were that the decree of the Probate Court described in the tenth and eleventh paragraphs of the bill be declared null and void for the reasons there stated; that the

plaintiff be declared entitled to take under the Phillips Trust as administrator of the estate of DeForest Woodruff Chase " sole lawful issue " of Jeannie P. Chase; that he be declared to take under the Culliton Trust as administrator of DeForest Woodruff Chase, "sole heir at law " of Jeannie P. Chase, and individually as statutory heir at law of Jeannie P. Chase.

The answer admitted all the allegations of the first ten paragraphs of the bill, and denied those of the eleventh, reciting the circumstances of the suit there referred to, which are reported in 203 Mass. 556, and stating further that the plaintiff sued out a writ of error to the Supreme Court of the United States, alleging that by the revocation of the decree of adoption he was denied due process of law and his property was taken without due process of law in violation of the Constitution of the United States, and that a federal question was thus involved in the proceedings, that such alleged federal question was in truth without color of merit and accordingly, under the decisions of the Supreme Court of the United States, was not a genuine federal question, and that the plaintiff's writ of error was dismissed; and concluding with an allegation that the matters set out in the eleventh paragraph of the bill were *res judicata.*

The case was heard on the pleadings and an agreed statement of facts by *Rugg,* J. A final decree was entered dismissing the bill with costs. The plaintiff appealed.

*R. Y. Fitz Gerald,* for the plaintiff.

*E. R. Thayer, (J. L. Thorndike* with him,) for the defendants.

LORING, J. The plaintiff in this case was the defendant in *Phillips* v. *Chase,* 203 Mass. 556. He has brought this bill against the defendants as trustees of certain property put in trust in 1884 by Mrs. Culliton (who later became Mrs. Chase), seeking to have them directed to hold that property in trust for him. The bill is also brought against the defendants as trustees of certain other property held by them under the will of Mrs. Chase's mother, and the plaintiff seeks to have them directed to hold in trust for him that portion of the property of Mrs. Chase's mother the income of which was payable to Mrs. Chase during her life. The basis of the plaintiff's claim in both cases is the same, namely: On Mrs. Chase's death her adopted son Woodruff Chase was her only heir and next of kin, and the

plaintiff is the only heir and next of kin of his son Woodruff. But thé decree affirmed in *Phillips* v. *Chase*, 203 Mass. 556, decided that Woodruff Chase never was Mrs. Chase's heir. That question is *res judicata* between the plaintiff on the one side and Mrs. Chase's next of kin by blood on the other; and it is Mrs. Chase's next of kin by blood who are the persons beneficially interested in the trust property here in question if the plaintiff's claim through his son is not a good one. It is of no consequence that the plaintiff has brought the bill against the trustees alone, that is to say, without having joined as parties defendant those beneficially interested in the property. The next of kin by blood are the real parties defendant in the case at bar, and the doctrine of *res judicata* applies as much as if they were technically the parties and the only parties to this cause. See *In re Defries; Norton* v. *Levy*, 48 L. T. (N. S.) 703.

For that reason it is not necessary to consider the fact that the question decided in *Phillips* v. *Chase* was a question of status, as to which see *Hood* v. *Hood*, 110 Mass. 463.

This disposes of all the plaintiff's claim except his claim as statutory heir of his wife. This claim is confined to the first property mentioned above. By the terms of that trust this property was to be divided on Mrs. Chase's death " precisely as if said Jeannie P. Culliton had then died unmarried, intestate and possessed of said property in her own right." The plaintiff asks us to read into the agreement creating that trust after the word " unmarried " the words " to said Culliton," so that the agreement shall read "precisely as if said Jeannie P. Culliton had then died unmarried to said Culliton, intestate and possessed of said property in her own right."

The plaintiff's first contention is that if the agreement is construed literally it is void because in fraud of the plaintiff's marital rights. That contention cannot be maintained. This agreement was made in February, 1884. At that time Mrs. Chase was the wife of Culliton. She did not get a divorce from Culliton until June, 1888, and she was married to the plaintiff in January, 1889. Apart from the difficulties raised by the cases of *Kelley* v. *Snow*, 185 Mass. 288, and *Leonard* v. *Leonard*, 181 Mass. 458, it is plain that the agreement was not in fact made in fraud of the marital rights of the plaintiff.

His second contention is that the words used by Mrs. Culliton should not be given their natural meaning and he has sought to support this contention by citing a great number of cases, beginning with *Maberly* v. *Strode*, 3 Ves. 450, and ending with *In re Brydone's settlement*, [1903] 2 Ch. 84. These are cases in which the context has led the court to construe the words " die unmarried " to mean die a widow in place of die a spinster. The plaintiff especially relies on *Clarke* v. *Colls*, 9 H. L. Cas. 601, and goes so far as to say that it " covers our case exactly except that as a husband is here a direct heir he would come in as such in the first instance instead of through the child." That case may be taken as an example of the application to the case at bar of the cases cited by the plaintiff. *Clarke* v. *Colls* was the case of a marriage settlement of the property of the prospective wife, in which it was provided (in effect) that if her children did not inherit as therein provided the property should go as if she " had died possessed thereof intestate and unmarried." She died in giving birth to a boy and her son survived her one day. On her husband's death his legal representative claimed the property as the next of kin of the son. It was held that the words " as if she died intestate and unmarried " meant as if she died intestate and a widow, not as if she died intestate without having been married. This conclusion was reached for the reason that if she had survived her husband and had married again and had had children, the property would have gone to collateral kindred to the exclusion of her own children if the word "unmarried " were construed to mean without having had a husband. The result reached in that case was that the father took, and in the case at bar the plaintiff is trying to make out that he, the father, takes. But there is no other respect in which the two cases are alike. The father took there because his child took and it was held that it could not be assumed that a marriage settlement is intended to exclude the children of any marriage and give the property to collateral kindred. And again, what was done there was to construe the words " if she died intestate and unmarried " to mean if she died a widow. But this plaintiff is not now asking us to construe the words of this agreement in that way. So construed he does not take. What the plaintiff asks us to do is to construe those words to mean as

if she died unmarried to her first husband. This long array of cases does not help the plaintiff in that contention. All that they decide is that the context may show whether "die unmarried" means die a widow rather than die a spinster.

The context in the case at bar not only does not help the plaintiff in this contention of his but it affords additional reasons for not reading into the agreement the words he asks us to read into it. The whole of the clause relied upon by the plaintiff is in these words: "It being distinctly understood that the said William H. Culliton is not to be included among her heirs-at-law, and that neither he nor his legal representatives are to receive upon the death of said Jeannie P. Culliton any portion of said trust property, which upon her death is to be divided precisely as if the said Jeannie P. Culliton had then died unmarried, intestate and possessed of said property in her own right." By the first clause Mrs. Culliton, as she was then, had provided that Culliton "is not to be included among her heirs-at-law," and that "neither he nor his legal representatives are to receive upon the death of said Jeannie P. Culliton any portion of said trust property." The clause here in question presumably was inserted to add something to that provision. What Mrs. Culliton added was: "which [trust property] is to be divided precisely as if the said Jeannie P. Culliton had then died unmarried, intestate and possessed of said property in her own right." Culliton was excluded by the first clause. The second clause was to exclude all persons except those who would take if she died unmarried and intestate.

But in addition to that, construed in the light of Mrs. Culliton's experience in marrying Culliton, there is every reason to suppose that she wanted to arrange this property (as the words used by her say) so that it would not be an inducement to another man to marry her, that is to say, so that no husband would take it on her death.

The entry must be

*Bill dismissed.*