BEAUERLE *v.* MICHIGAN CENTRAL RAILROAD CO.

1. RAILROADS — CROSSING ACCIDENT — PERSONAL INJURIES — CON-
TRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad company for injuries to a
pedestrian at a street crossing, evidence examined, and *held*,
that, in view of testimony that the crossing gates were not
closed, that the bell was not rung, that the presence of other
cars and circumstances diverted plaintiff's attention, that the
train causing the injury came on silently, working no steam,
and that plaintiff looked in both directions before attempting
the crossing and satisfied himself that the train was station-
ary, it could not be said, as matter of law, that plaintiff was
guilty of contributory negligence barring recovery.

2. APPEAL AND ERROR—SAVING QUESTIONS FOR REVIEW—EXCEP-
TIONS—ASSIGNMENTS OF ERROR—NECESSITY.

Where no exception was taken or error assigned upon the
denial of a motion for judgment notwithstanding the verdict,
the question cannot be considered.

3. SAME—ASSIGNMENTS OF ERROR—SCOPE.

Failure to assign error on the denial of a motion for judgment
notwithstanding the verdict is not aided by an assignment on
the refusal of requests to charge involving the same theory,
the two matters being entirely distinct.

4. TRIAL—REQUESTS TO CHARGE—REFUSAL—PROPRIETY.

Requested instructions based upon a misstatement of the ad-
versary's claims are properly refused.

5. DAMAGES — AGGRAVATION OF EXISTING AILMENT — DELAY IN
TREATMENT—EFFECT.

Evidence of an aggravation of a nasal difficulty and delay in
recovery therefrom by reason of the personal injury sued for
is not inadmissible because of a delay of five months in pro-
curing treatment, where plaintiff was confined to his house
for four months by the injury, but the matter is for the jury
under proper instructions.

6. SAME—REDUCTION OF DAMAGE—DUTY OF PERSON INJURED.

Where an existing ailment is aggravated by a personal injury,
it is the duty of the person injured to use all reasonable efforts,
considering the circumstances, to procure medical and surgi-

cal aid in correcting the trouble, so that the injury will aggravate the difficulty and retard recovery as little as possible.

7. Evidence—Opinions—Experts—Examination.

A physician, who assisted at the amputation of plaintiff's leg, had been his family physician, knew the condition and history of the leg, and had qualified as an expert. The condition of the leg, the fact that gangrene had attacked it, that it had sloughed off, and the inability to wear an artificial limb had all been stated in detail. In response to a question as to what could be done to improve the condition of the limb and make it practicable for use in connection with an artificial limb, he answered that he could not say that an operation could be done and preserve the kneejoint, and that he feared there would not be enough bone left to have any influence in swinging an artificial limb. *Held*, that the latter statement was an opinion as to probable results, and a motion to strike it was properly overruled.

8. Trial—Argument of Counsel—Appeal to Sympathy—Cure by Instructions.

In an action against a railroad company for personal injuries, counsel for plaintiff stated, in effect, that defendant could spare the amount of a judgment better than plaintiff. The court soon after charged the jury that it was his duty to call their attention to the statement, and that they should not consider it, that litigants were considered upon an equality before the courts and juries, and the fact that defendant was a corporation and could stand a judgment should not be considered by the jury or weigh in any degree in their deliberations. *Held*, that, though the remark was improper, it was cured by the charge of the court.

Error to Kent; Wolcott, J. Submitted November 21, 1907. (Docket No. 102.) Decided May 1, 1908.

Case by Jerome A. Beauerle against the Michigan Central Railroad Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Taggart, Denison & Wilson* (*Henry Russel* and *O. E. Butterfield*, of counsel), for appellant.

*Lombard & Hext*, for appellee.

McALVAY, J.   Plaintiff recovered for personal injuries
he received at Kalamazoo, while crossing the railroad
tracks of defendant company, by being run over by the
engine of a freight train, which injuries he claims were
caused by the negligence of defendant's agents and ser-
vants.   The injuries were severe and the judgment sub-
stantial.   The case is here for review upon errors assigned;
the chief contention of defendant being that plaintiff was
guilty of contributory negligence, and that the court
should have instructed a verdict for defendant on that
ground.   The negligence relied upon by plaintiff was that
the engine bell was not ringing; that it ran over the
crossing at a speed of 20 to 25 miles an hour, which was
claimed to be excessive; and that the crossing gates were
not lowered.   It is conceded that there was a conflict of
evidence upon these points, and that the question of the
negligence of defendant (if it should have been submitted
at all) was properly submitted to the jury.

Plaintiff was familiar with this crossing and all of its
surroundings.   He resided on the south side of Kalama-
zoo avenue, a short distance west of the railroad crossing,
and had lived there 14 years.   He crossed the tracks every
day in going to and coming from his work.   On the even-
ing in question, March 12, 1906, he left the store where he
worked about 6:15 p. m.   He stopped at several places
and reached this crossing about 7:20.   West street in the
city of Kalamazoo runs north and south.   Kalamazoo
avenue runs east and west, crossing West street at right
angles.   The railroad crossing on Kalamazoo avenue is
about 250 feet west of the west line of West street.   Three
of defendant's tracks cross Kalamazoo avenue at this
place at an angle, running from southwest towards the
northeast, and intersects West street about 75 feet north
of the north line of Kalamazoo avenue, where these streets
intersect.   There are crossing gates operated from a gate
tower.   The first track reached, approaching from the
east, is the main track for trains going east.   The next
track is the main track for trains going west.   The third

track is a side track.   This side track connects with the west-bound main track by a switch located about 165 feet northeast of the north line of Kalamazoo avenue.   The side track continues southwesterly parallel with the main lines for some distance.   North of Kalamazoo avenue and a short distance beyond the above-described tracks was located a coal dock used to supply engines with coal.   On each side of this coal dock was a side track.   The one on the north side was used for engines taking coal, and the one on the south side for cars which supplied the coal. These coal dock tracks did not cross Kalamazoo avenue. They extended northeasterly about parallel with the main lines.   The accompanying diagram shows the location of the streets, tracks, etc., and the place where plaintiff was injured.   On the night in question plaintiff went north on the west side of West street to the south side of Kalamazoo avenue and turned west on the south sidewalk of that street.   This corner is about 250 feet east of the first track.   Four houses on the south side of this avenue obstruct a view of the tracks to the southwest until a point 50 feet east of the first track is reached.   At this point the view to the southwest is unobstructed for a distance of from 90 to 100 rods.

The facts which plaintiff claims the evidence on his part tended to show, as to what occurred from the time he arrived at the place last above mentioned until he was struck and injured by the engine of defendant, cannot be more carefully and accurately stated than by adopting the following language of the learned trial judge, used by him in passing upon a motion made by defendant at the close of plaintiff's case to instruct a verdict in its favor on account of the contributory negligence of plaintiff:

"*The Court:* The law is pretty well settled on these questions, but each case presents its own peculiar features. A motion made at this time the court must give to the plaintiff's evidence, which at the present time is undisputed, its full weight.   It may or it may not be disputed by the evidence hereafter, but at this time the court must

consider the testimony given by the plaintiff as established in the case for the purpose of this motion.

" I think there is no question but what a person crossing a railroad track, where safety gates are maintained, is not permitted to rely solely upon the fact that the gates are open. If the plaintiff's evidence is to be believed in this case, he did not rely upon that entirely. He testifies that he understood or knew that a train was due about that time from the west on the track nearest him. He claims that he took precaution to look, when he reached a point that he could, in that direction, and satisfy himself that no train was approaching from that direction. He also claims that he took the precaution of looking to the east. He saw there a headlight and a small light. He claims that he observed them long enough to know or observe that they were not separating, and the appearance was that of an engine standing there. He claims that he is familiar with this crossing and with the operation of the trains on that road; that he had frequently seen a train, switching train and other trains, standing at about that position. I do not mean to say that the fact that he was mistaken about that, the fact of his mistake alone, would be justification for his proceeding. Perhaps, it would be fair to say that his belief that the train was standing there, or was on the other track, may have been aided somewhat by the fact that the safety gates were up and not down, which he would have reason to expect would be the case were a train approaching on the track that crossed the street; and the fact that appears here in evidence on behalf of the plaintiff that it was a dark night; and that the train was approaching with the steam shut off, not working, and his vision was somewhat obscured, besides the darkness, by smoke. And I think it also appears, or is claimed, that the hearing was somewhat interrupted by the man who was shoveling coal into the steel bucket, or whatever it was, on the track near there; and there was also, he claims, another freight train that he was watching to see whether it was going to cross the track, or something to that effect. The situation must be judged by the circumstances surrounding the particular case.

" It is true in this case, as in nearly every case where an accident occurs, that, if the party had taken some other and different or further precaution than he did, he would have escaped injury. That, however, is not the

test; whether it would have been possible to have taken a degree of care that might have avoided the injury, but whether a reasonably prudent man, in the same situation and under the same circumstances, would have taken other precautions and so saved injury, or whether a reasonably prudent man, under those circumstances, would have gone on after taking such precautions as the plaintiff claims he did. The court expresses no opinion on the evidence of what the jury might find or ought to find. The duty of the court is only where it is so clear from the evidence that a verdict ought not to stand if one was rendered, where the contributory negligence is so apparent that reasonable men could draw but one conclusion from it, that the court is warranted in saying, as a matter of law, that the plaintiff is negligent, and so is precluded from recovery. In every other case it is the duty of the court to submit the question to the jury under the evidence, and for them to say, instead of the court, whether or not the plaintiff was guilty of contributory negligence in doing as he did.

"It is my judgment, from the evidence as it stands at this time, that the plaintiff has shown sufficient facts to entitle him to submit the question to the jury. The court cannot say that it has appeared so clearly that the plaintiff was guilty of contributory negligence that the court should say so as a matter of law. With that view the court feels constrained to submit the question to the jury and to deny the motion. You can have an exception."

When, at the close of the case, the same motion was again made by defendant, and was denied by the court, the situation, as far as the question involved was concerned, was the same as when the motion was first denied. The question for us to decide is whether we can say that plaintiff was guilty of contributory negligence, as a matter of law. Defendant insists that this case is controlled by the following cases: *Brinker* v. *Railroad Co.*, 121 Mich. 283; *Spaven* v. *Railway Co.*, 130 Mich. 579; *Boutell* v. *Railroad Co.*, 133 Mich. 486. In each of these cases the plaintiff knew that a train was approaching actually in motion. That is not this case. Plaintiff did not know that a train was approaching, but had satisfied himself by observation that such was not the case. He did not

rely solely upon the fact that the gates were not down. He observed what he thought to be the switch light with an engine standing by it, where he had formerly seen engines standing, and looked long enough to satisfy himself the lights were stationary.    The court well said :

" Perhaps it would be fair to say that his belief that the train was standing there, or was on the other track, may have been aided somewhat by the fact that the safety gates were up, and not down, which he would have reason to expect would be the case were a train approaching on the track that crossed the street."

We may add that such belief may also have been aided by the fact that, as he claims, no bell was rung.    Both of these warnings he was entitled to receive.    The question as to whether they were given was one of fact for the jury.    The case at bar also differs from the cases cited in that directly on the south side of the highway, and near at hand, stood a freight train and a man walking beside the train, passing toward the other end carrying a lantern. Whether or not an engine was attached to the train could not be seen.    This certainly was other danger which required his attention, not to the exclusion of care and attention as to any danger that might come from the other way; but, as already appears, he claimed that he had given such attention in the manner stated.    He gave attention to this freight train and the safety gate directly before him as he proceeded on his way.    The case at bar is distinguishable from the following cases relied on by defendant: *Gardner* v. *Railroad Co.*, 97 Mich. 240; *McCarthy* v. *Railway Co.*, 120 Mich. 400.    In both of these cases no attention whatever was given by either plaintiff when crossing the tracks, by looking for cars which might be approaching.    Taking into consideration all of the circumstances surrounding this case, we cannot say, as a matter of law, plaintiff was guilty of contributory negligence, and agree with the trial court that the question was for the jury.

Special questions were, at defendant's request, submitted to and answered by the jury, as follows :

" (1)  Was there any light on the front of the engine that struck plaintiff except the headlight ?
" No.
" (2)  Did plaintiff, in looking toward the train that struck him, see the headlight and another light on the front of the engine on plaintiff's right of the headlight ?
" No.
" (3)  Did plaintiff see the train coming which struck him and attempt to cross in front of it ?
" No.
" (4)  Was the engine that struck plaintiff working steam when it crossed Kalamazoo avenue ?
" No.
" (5)  Were the gates on the east side of the railroad at Kalamazoo avenue lowered before the train which struck plaintiff crossed that avenue ?
" No."

Defendant claimed that the answers to 1 and 2 of these questions were inconsistent with plaintiff's theory, and made a motion to set aside the judgment entered upon the verdict of the jury and enter a judgment in favor of the defendant non obstante veredicto.  This motion was denied.  No exception was taken, and no error assigned upon such action.  For this reason this court cannot consider the question.

Defendant claims that this point was covered by refusal on the part of the court to give certain requests.  The two matters are entirely distinct.  The three requests which were denied, and upon which errors were duly assigned, were properly refused for the reason that all of them were founded upon the statement that plaintiff relied upon the fact that there were two lights on the *front* of the engine. This was not supported by any claim or testimony upon the part of plaintiff.  Plaintiff's theory was that there were two lights on the engine, which accounted for the fact that they kept on their relative positions; that otherwise two lights would not have been seen, for the reason that the engine was between plaintiff and the switch light, for which the small light was mistaken.  Plaintiff's counsel in his opening called it " a sidelight on the engine."

Objection is made and error is alleged because the court permitted plaintiff to testify as to the aggravation of a nasal difficulty, by reason of his injury by the engine of defendant, for the reason that plaintiff delayed for an unreasonable time before being treated for it. He was injured March 12, 1906. His leg was amputated at once, and he remained in the hospital until April 22d, when he was removed to his home, and was confined to his bed for three or four weeks. He was unable to get to the porch of his home until in June, and first got into the yard on July 4th. He went to see the specialist who had formerly treated him for this nasal difficulty about the middle of August. His nose had been broken and his face severely injured by the railroad accident. He first felt the nasal difficulty becoming aggravated about four weeks after this injury. The charge of the court upon this matter was as follows:

"There is also a claim on the part of the plaintiff for damages relating to the nasal difficulty from which he suffered, and which had been operated upon before the injury on the railroad. He claims that this was in process of recovery, but that the recovery was delayed and the trouble aggravated by this injury. You could not consider here as an element of damage the original trouble, nor any result therefrom, except as you find, and unless you find, that the trouble was aggravated by this injury; and if the plaintiff could reasonably, by consultation with his physician and by medical and surgical care, have corrected the trouble so that the injury would not have retarded the recovery nor aggravated the trouble, it would be his duty to use all reasonable efforts in that direction, considering the condition and situation in which the plaintiff was and the circumstances surrounding him at the time."

The evidence was properly received and submitted to the jury as an element of damages in the case under proper instructions.

One of the physicians, who was present and assisted on the night of the accident when plaintiff's leg was amputated, was permitted to testify as follows:

"*Q.* What in your judgment can be done to improve the condition of the limb and make it practicable for use in connection with the artificial limb ?

"*A.* I would not undertake to say that an operation could be done and preserve the kneejoint. I could not be sure about that until the operation was undertaken. I fear that there would not be enough bone left to have any influence in swinging the artificial limb.

" *Mr. Wilson:* I move to strike out the last statement of the doctor as to what he fears. ·

" *The Court:* It may stand. I take it as the opinion expressed by the witness as to the probable results.

" *Mr. Wilson:* I take an exception."

The condition of this leg, the inability to wear an artificial limb, the fact that gangrene had attacked it, and it had sloughed off, had all been stated in detail. The witness had qualified himself to testify as an expert, and was acquainted with plaintiff, having been his family physician. He knew of the condition and history of the leg and had seen it and knew its present condition. The objection of defendant is that the inference of the court from this testimony was unwarranted. The question asked for the opinion of the witness, and, taking the entire answer, we are of opinion that the court drew the reasonable and fair inference from this testimony.

Remarks of counsel for plaintiff made during the closing of the final argument were objected to. This statement was to the effect that defendant could spare the amount of a judgment better than plaintiff. The charge of the court soon followed this, and the court, referring directly to this statement, charged the jury that it was his duty to call their attention to it; that they should not consider it; that litigants were considered upon an equality before the courts and juries. He said the fact that the defendant was a corporation and could stand a judgment should not be considered by the jury or weigh in any degree in their deliberations. The remark was improper, but the correction of it made by the court in his charge

must have been clearly understood by the jury, and was a proper rebuke to counsel, and we think cured the effect of counsel's statement.

The judgment of the circuit court is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and CARPENTER, JJ., concurred.