JAMES WILLIAMS, Appellant, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellee.

**Railroads:** CROSSING ACCIDENT: CONTRIBUTORY NEGLIGENCE: EVIDENCE. While as a general rule the questions of negligence and contributory negligence are to be determined by the jury from all the circumstances disclosed, still where one on approaching a railway crossing, open to view for a considerable distance, is so clearly negligent in failing to use his senses to ascertain if a train is within a distance threatening collision that reasonable minds cannot differ on the subject, his negligence becomes a question of law with which the jury has no concern. Evidence held to conclusively establish contributory negligence.

**Same:** "LAST CLEAR CHANCE." Where there was no evidence tending to show that the engineer of a train on approaching a highway crossing discovered, or ought to have discovered, the danger of colliding with plaintiff in time to have stopped his train, the doctrine of the "last clear chance" has no application.

**Contributory negligence.** Where a plaintiff is precluded by his contributory negligence from recovering for his own injuries received while crossing a railway track, he cannot recover for injury of his team and wagon.

*Appeal from Keokuk District Court.*— HON. W. G. CLEMENTS, Judge.

TUESDAY, OCTOBER 20, 1908.

Action to recover damages for personal injury. Judgment for defendant upon a directed verdict, and plaintiff appeals.— *Affirmed.*

*C. M. Brown,* for appellant.

*C. H. Mackey* and *Cook, Crocker, Loomis & Tourtellot,* for appellee.

Weaver, J.— At the date of the accident, plaintiff was a rural mail carrier, whose route, beginning at Sigourney, crossed the line of defendant's road about a mile from the station at said town. The morning train passing Sigourney usually arrived before plaintiff started upon his trip, but on the morning in question it was late, and he was aware of the fact. The highway along which he drove crossed the railway track at a somewhat sharp angle, making the distance from the boundary of the right of way to the track, measured along the highway, about seventy feet. A telegraph pole stands by the roadside about twenty feet from the right of way. For a distance of about twelve rods from the crossing a person driving from Sigourney has at all points a clear view of a train moving from the north for a distance of at least eighty rods, though for a part of this distance the track is not visible because of cuts which are not of sufficient depth to hide the train. The plaintiff's evidence is to the effect that, knowing the train was late, he looked for it soon after he passed the telephone pole, but there was nothing in sight, nor did he hear any whistle, bell, or other alarm. Instead of looking again, or taking other precaution against danger of collision, he turned his attention to sorting or picking up the mail which he had to deposit in a box on the other side of the crossing. His team was proceeding at a walk, and, so far as plaintiff observed, manifested no signs of fright. Just as they were fairly upon the track, they were struck by the

train, one of the horses was killed, the carriage wrecked, and the plaintiff severely injured. It should be said that plaintiff was, and for some time had been, partially deaf. While he could hear noises and tones of voice, he could not well understand ordinary conversation. There is also evidence that the train was moving more rapidly than usual, though no one undertakes to estimate its speed, and the record is such that the jury would have been justified in finding that defendant was negligent in failing to give the usual crossing signals. The one serious question presented by the record is whether the plaintiff should be held chargeable with contributory negligence as a matter of law.

After considerable reflection, we hold that this question must be answered in the affirmative, and the trial court was not in error in directing a verdict for the defendant. It is 1. RAILROADS: crossing accident: contributory negligence: evidence. true that, generally speaking, negligence and contributory negligence are conclusions or inferences to be drawn from all the circumstances disclosed by the testimony, and are therefore jury questions, but it is also too well settled to require citation of authorities that, when the case as made by the plaintiff himself so clearly and conclusively reveals his want of due care as to leave no room for difference of opinion concerning it among fair-minded men, his negligence is established as a matter of law, and no issue is presented for the jury. It is a matter of common knowledge that a railway crossing is a place of danger, and the duty of the traveler on the highway to exercise reasonable care to avoid injury is clearly manifest to every reasonable mind. The person who knowingly approaches such a crossing where the track is open to view for any considerable distance, and does not exercise his senses to ascertain if a train is within distance to threaten a collision, is clearly negligent, and such is the instinctive judgment of all persons of ordinary prudence. In some jurisdictions, notably in the State of Pennsylvania, it is a practically unvarying rule of law that the highway traveler, before ventur-

ing upon a railway crossing, must stop, look both ways for approaching trains, and listen for sounds and signals indicating such approach, and that failure to do so is in all cases negligence *per se*. This extreme and harsh rule has never been approved in this State, and whether the traveler should stop, look, and listen is held to depend upon the circumstances of the particular case under consideration, and, save in exceptional cases, is a question for the jury.

Nor is it held to be incumbent on the highway traveler to continue to scan the track in either direction at each successive step until the crossing is accomplished, but, on the other hand, he must not forget that he is endowed with senses of sight and hearing, the reasonable use of which is, in a great majority of cases, his sufficient protection against injury of this nature. There are not wanting many cases where the traveler, having once looked for approaching trains when at a suitable distance from a crossing, is held not to be negligent as a matter of law because he failed to look again. In these cases, however, we invariably find circumstances reasonably excusing the exercise of such vigilance, as, for instance, intervening obstructions to the view, necessary attention to a frightened or nervous team; multiplicity of tracks and moving trains calculated to confuse or distract the attention, open crossing gates giving implied assurance of safety, or some fact other than his own forgetfulness or mental abstraction which might fairly lead a reasonably prudent person to omit such precaution. *Beauerle v. Railroad Co.* (Mich.), 116 N. W. 424. The case before us is barren of such modifying circumstances. During the last twelve rods of his approach to the crossing plaintiff could have discovered the train bearing down upon him for a distance of at least a quarter of a mile. He looked when at a distance of four rods, and saw nothing. From that point there was nothing to distract his attention. He was driving a tractable team, at a walk, over a crossing with which he was very familiar. There was nothing to obstruct his view, no other noises to

drown the sound of the moving train or of the signals, if any; and, without further thought of the dangers incident to such crossing, he turned his eyes and his hands to the business of gathering up the mail for the next delivery. Speaking of his conduct from the time when he looked when four rods from the crossing, and then turned to his mail, the plaintiff himself says: "I thought I was safe. I never looked up again and paid no further heed to the train." If, after satisfying himself with the look at a distance of four rods from the crossing, plaintiff had given his attention to reading a newspaper while his horses walked along to a collision with a train which he could have seen and avoided at any point of the intervening distance, counsel would hardly deny the justice of a ruling that such conduct amounts to negligence *per se.* We are unable to see that the case before us presents any less flagrant want of care. The slightest attention to his surroundings would have saved him from injury, and, failing in this, he is not in a position to recover damages.

Nor is there any room to apply the doctrine of the "last clear chance," which counsel in oral argument have pressed upon our attention. It is true that defendant's engineer and fireman were in a position to see the plaintiff, and we may presume did see him approaching the crossing; but, if so, they also saw the team moving at a moderate gait, and showing no signs of being unmanageable, and they had the right to assume that the driver as a sane and reasonable person would stop or turn aside. There is no evidence whatever tending to show that the engineer discovered, or ought to have discovered, the imminence of a collision in time to avoid it by stopping the train.

2. SAME: "last clear chance."

It is also suggested by counsel that, even if plaintiff be barred by his own negligence from recovering damages on account of his personal injuries, he may yet recover for the injury to his team and carriage under the doctrine applied in *Graybill v. Railroad Co.,*

3. CONTRIBUTORY NEGLIGENCE.

112 Iowa, 738. In the cited case a railway company was held liable for injury occasioned to cattle by reason of failure to give the statutory crossing signals. The cattle injured in that case were at large, and it was reasoned that, had the signals been given, the animals would or might have been frightened from the crossing, and the damage would thus have been avoided. Had those cattle been in charge of their owner who had negligently driven them upon the crossing, it is inconceivable that a recovery would have been upheld. The plaintiff's negligence having directly contributed to the collision and precluded him from recovering damages for his personal injury, he can no more recover for the killing of his team or the wrecking of his carriage than he could be permitted to recover for the injury of the clothes upon his person. The injury to his property like the injury to his person was the result, in part at least, of his own negligence.

The judgment of the district court is clearly right, and it is *affirmed*.