O'CONNOR v. CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS — CONTRIBU-
   TORY NEGLIGENCE.
   It is not negligence, as a matter of law, for a person who knows
   of the defective condition in a sidewalk to use the walk, ex-
   ercising care commensurate with the danger.

2. TRIAL—ARGUMENT—IMPROPER STATEMENTS.
   Argument of counsel concerning evidence which was rejected
   by the court, cured by the prompt interposition of the trial
   judge and by his charge to the jury, is not reversible error,
   in the absence of a request for further instructions on the
   part of defendant.

Error to Wayne; Chester, J., presiding. Submitted
January 13, 1910. (Docket No. 46.) Decided March 5,
1910.

Case by Emily H. O'Connor against the city of Detroit
for personal injuries. A judgment for plaintiff is reviewed
by defendant on writ of error. Affirmed.

*Edmund Atkinson* and *Richard I. Lawson* (*P. J.
M. Hally*, of counsel), for appellant.

*Frederic T. Harward*, for appellee.

MOORE, J. On the 9th day of May, 1907, between
7 and 8 o'clock in the evening, the plaintiff, in com-
pany with her daughter, 11 years of age, started from her
home to call upon a friend. While walking on the west
side of Sixteenth street, they reached an alley crosswalk
which was in a defective condition. Some of the boards
were broken, and there were a number of holes. When
plaintiff arrived at the alley crosswalk, she halted and
said to her little girl:

" Stand until I get across, and then you can come be-

hind me.   There isn't room for us both unless we step in that hole."

She attempted to avoid the hole, and the board upon which she placed her foot gave way, and she claims her knee was injured by coming in contact with either a stringer or one of the broken planks.   Later this suit was brought and resulted in a judgment in her favor of $1,750. The case is brought here by writ of error.

There are a great many assignments of error, but the important ones may be discussed under two groups:

(1) Can it be said, as a matter of law, that the plaintiff was so guilty of contributory negligence that she cannot recover?

(2) Was the conduct and argument of counsel reversible error?

The assignments of error that do not properly belong in these groups have been examined but will not be discussed.

1. It is insisted by counsel for the city that a verdict should have been directed in its favor because of the contributory negligence of plaintiff.   In addition to the oral evidence, there has been returned a number of photographs of the condition of the walk where the accident happened. These indicate a very defective walk, but they also indicate that the plank upon which plaintiff says she stepped, when she attempted to avoid the hole, looked much better than it proved to be when she put her weight upon it.

The testimony of the plaintiff, as well as the appearance of the photographs, indicated that an ordinarily prudent person might step upon the plank without expecting that it would give way beneath her.   Some of the testimony is as follows:

"The boards of the crosswalk ran lengthwise, the same as in all alleys.   I was at the north end of the crosswalk just beyond the crosswalk.   Right next to the crosswalk there was one or two boards out.   A place was out in width so a person could step across it easily.   It was not any more than a foot and a half.   *   *   *   When I

stepped on this board to get the momentum to step across the place where the board was out, of course, I looked to see where my foot was going; I was very particular. I could see no lights near there that night. I think it was a little bit early maybe for the electric lights, although they are generally lighted before dark. The moonlight, I might be able to see, but I don't think there is any light that shows on there; in fact, there was not that night. It was a very cloudy night, and I had to look very closely to see the holes at all. * * * I had in mind when I came to this particular walk, on this evening in May, 1907, the defective condition of this particular place, and I tried to be exceptionally careful on that account. Before I approached that particular place, I said then: 'Marjorie, let me go across here first. There is not room for both of us, unless we step in that hole.' I made her stand behind me until I got across first. She stood aside and waited for me. We could not both cross together. I said, 'Let me cross first.' * * * It was while I was taking this long step with my right foot that my left foot went through, before I got a chance to step over. I was just stepping over with my right foot forward, and my left foot caved into this board—the board broke with me, because you could hear it break.

"*Q.* As a matter of fact, that evening you did not pay any particular attention to the particular place you went in, at all, did you?

"*A.* Oh, yes, I did. I was very careful in stepping, where I could be careful. After I got up, I went right over to Mrs. Kahn's. I crawled along on my knees for a minute or two, because I was so afraid of falling into that hole that I had stepped over, the opening in the sidewalk. I crawled along on my knees until I got a little ways."

Marjorie, the daughter, testified, in part, as follows:

" My mother and I were walking abreast until we came to the alley nearest to the Boulevard. Then when we came to the alley mamma went ahead and I went back. I drew back as we got near the alley because mamma told me to be careful, and she went ahead, so she could help me over. She went ahead and started to walk over that place where the planks were out in the sidewalk, and she took what she thought was just the best looking board. She went on this board and was going to step across to help me, and the board gave way with her. I heard the

board crack, and saw her fall. This was a board of the crosswalk nearest the Boulevard. It was the left-hand side of the crosswalk as we went up, where this board cracked. My mother fell. The ground at that time was all muddy around there; it was damp. We could not go out and walk around handily."

Mr. Deering, who lived near the crosswalk, testified:

"*A.* Well, I will tell you, I should say that that walk was very deceiving. It seems to me that the end board of that walk you were possibly thinking you were stepping on the end of a board that might be a little firm, and it might be a little rotted away."

There was other testimony to the same effect.

*Belyea* v. *City of Port Huron*, 136 Mich. 505 (99 N. W. 740), is a case whose facts are very similar. Plaintiff, a man 54 years old, was hurt between 10 and 11 o'clock at night. He knew that the walk was torn up and knew of its condition. The night was dark. The court said:

"It has been repeatedly held that a man is not precluded from traveling over a highway or sidewalk simply because he knows there is a defect in it. He is bound, however, to exercise such care and diligence as a prudent man would exercise in view of the danger"—citing many cases.

In *Oesterreich* v. *City of Detroit*, 137 Mich. 417 (100 N. W. 593), MONTGOMERY, J., speaking for the court, said:

"Her testimony shows that the walk in question was in bad condition, and that there were numerous holes in it, and was known to be in this condition by the plaintiff; that on the evening in question, about 8:30, she returned from shopping in the city, alighted from a car, and started to travel over the walk in question, having her child, 1½ years old, in her arms, and carrying a half dozen eggs. The plaintiff might have avoided the sidewalk where the injury occurred by going across lots through a path, but she testified that she did not consider it safe to do so at that time in the evening. Surely she cannot be charged with negligence for acting upon such motives as would without doubt influence most women similarly situated.

It is not negligence *per se* for one knowing of defects in a sidewalk to attempt to pass over it.   *   *   *   We do not think it can be said that this testimony shows want of due care, as a matter of law.   If it be said that she might have seen the holes and avoided them, it does not follow that she was in fault in failing to discover that the plank upon which she stepped would tip up and cause her injury."

In *Lewis* v. *City of Marshall*, 146 Mich. 390 (109 N. W. 663), plaintiff was thrown down and injured while passing over a defective sidewalk.   She was, at the time, carrying a few apples in her apron.   She had been over the same walk four weeks previously with her husband and had caught her foot and stumbled.   Upon the occasion of her injury she was looking for and seeking to avoid the defect.   Justice OSTRANDER, speaking for the court, said:

"It is unnecessary to set out more of the evidence. There is some of it which tends to prove that plaintiff did not exercise the care in the use of the way that conditions there apparent and her previous acquaintance with those conditions enjoined.   For the purposes of this case, her testimony and that of her witnesses must be viewed in the light most favorable to her.   It cannot be said, in view of previous decisions of this court, that her want of due care is, as matter of law, established."

See, also, *Vander Velde* v. *Leroy*, 140 Mich. 361 (103 N. W. 812).

The circuit judge rightly held there was a case for the jury.

2. Was the conduct and argument of counsel for plaintiff such that, because of it, the case should be reversed? The conduct and manner of the counsel for the city in examining the witnesses for plaintiff was not calculated to result in orderly procedure.   It is not surprising that some irritation was manifested on the part of counsel for plaintiff, but as a rule he kept himself well under control. When he did not, Judge Chester, who was the trial judge, at once corrected any possible mischief.   The following will illustrate:

"Mr. Harward said:

"Why didn't he bring Dr. Lafferty here? I offered to put his report in and they asked that it be rejected. If they wanted his report, why didn't they let me read it?

"*Mr. Atkinson:* I object to this. May it please the court, I think that argument is not proper, on the report.

"*Mr. Harward:* It was excluded by your request.

"*The Court:* The jurors will take nothing from this argument, from this offer, and exclusion of this report."

Further, the court, in this connection, charged the jury as follows:

"Regarding the testimony of the doctors, gentlemen, you are instructed that the plaintiff has failed to call Dr. Lafferty and Dr. Mills. The defendant cannot procure the testimony of these witnesses without the consent of the plaintiff. This consent has not appeared of record in this case. You are therefore instructed that you are at liberty to presume that the testimony of such witnesses, if called, would be unfavorable to the plaintiff. That has reference to the condition of the plaintiff, as I understand it, and applied to the doctors."

Defendant was evidently content with what was done by the trial court, for it did not again call its attention to what occurred and ask for further directions to the jury. See *Brown* v. *Evans*, 149 Mich. 430 (112 N. W. 1079); *Muncie Wheel & Jobbing Co.* v. *Finch*, 150 Mich. 274 (113 N. W. 1107); *Beauerle* v. *Railroad Co.*, 152 Mich. 345 (116 N. W. 424); *Fillingham* v. *Railway*, 154 Mich. 233 (117 N. W. 635); *Scheer* v. *Railway*, 155 Mich. 561 (119 N. W. 1084).

Judgment is affirmed.

HOOKER, MCALVAY, BROOKE, and BLAIR, JJ., concurred.