## RUBY GROSS v. HILDER HOAG, SPECIAL ADMINISTRATRIX OF ESTATE OF WILLIAM HOAG.

87 N. W. (2d) 542.

January 3, 1958—No. 36,984.

*James E. Finley,* for appellant.
*Daniel T. Cody,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Plaintiff, Ruby Gross, a passenger in an automobile which was being driven westerly on University Avenue in St. Paul by William Hoag on November 3, 1952, at about 2 p. m., was injured when it stopped suddenly for a stoplight on a semaphore at the intersection of University Avenue and Prior Avenue. Subsequent to commencement of her action against William Hoag, he died, and Hilder Hoag as special administratrix of his estate, was substituted as defendant. The jury returned a verdict of $7,500 for plaintiff. This is an appeal from an order denying defendant's subsequent motion for a new trial.

On appeal defendant contends that (1) the damages awarded are excessive and were influenced by the extensive testimony of Dr. Eugene M. Casper, even though such testimony was stricken; (2) the court erred in refusing to instruct the jury that plaintiff's failure to submit

certain evidence tended to militate against her contentions; (3) the court erred in refusing to strike an unresponsive answer of plaintiff that after the accident she had exclaimed "Oh, my back, what has happened"; and (4) the evidence is insufficient to sustain a finding of negligence on the part of the driver.

As indicated plaintiff was injured when the automobile stopped suddenly and she was thrown across the collapsible front seat and up against the dashboard. Immediately thereafter she proceeded to the office of Dr. Heinz where she was treated for a cut on the right temple, a bruise on the right side of her face, and a pain in her upper back. She testified that after the accident she also felt pain in the kidney region of her back and in her stomach but did not testify as to any treatment prescribed therefor by Dr. Heinz. He was not called as a witness.

Dr. Eugene M. Casper testified for plaintiff at some length. His testimony was that he had performed an operation upon plaintiff in 1948 for the removal of her uterus; that the first time he saw plaintiff after the accident was on March 31, 1953, at which time she came in for a physical checkup; that his notes did not reveal that at that time she complained of any pain in the abdomen, or back; that the next time he saw plaintiff was on June 2, 1953, at which time she complained of pain in her back, her right side, and her abdomen; that he made a pelvic examination and gave her certain other tests and diagnosed an infection of her bladder and kidneys for which he treated her with penicillin and which had cleared up when she was again examined by him on July 28, 1953; that he examined plaintiff on October 13, 1953, at which time there had been a return of her bladder infection for which she was again treated with penicillin and which was again cured; that he next saw her on April 22, 1954, at which time he examined her and found a condition called enterocele or "hernia in the bowel" which caused a certain amount of pain and discomfort; that he again saw plaintiff on May 24, 1954, at which time he checked on her blood pressure and found her condition about the same as it related to the enterocele. He testified that in his opinion surgery was necessary to repair the enterocele and that her injuries were permanent in nature. When asked if plaintiff's pain in the

lower part of her back and side had any causal relationship to the described accident, he replied that he thought the enterocele *"could have been* started by the accident" (italics supplied); that "Up until that time she had not had any bladder trouble * * *; and when the enterocele develops it does pull the bladder down some * * *."

Upon cross-examination Dr. Casper testified that at no time was he aware of the fact that plaintiff had been in an automobile accident until April 22, 1954, giving rise to the presumption that plaintiff had not so informed him until that date, and he admitted that the enterocele may have been the result of plaintiff's previous surgery. Upon motion the trial court struck all of Dr. Casper's testimony because of his failure to link plaintiff's disabilities to the accident, the court then stating "He [Dr. Casper] didn't say * * * it [the enterocele] was caused by the accident, he said it could have been. On cross-examination he admitted it may have been the residual result of surgery."

Subsequently, it instructed the jury as follows:

"No award may be made for Dr. Casper's services * * *. Nor may any award be made for the condition of * * * [the] bladder or kidneys at the time of Dr. Casper's treatment, as again there is no proof here that that condition was caused by this accident."

Dr. Harry John Lommel, a dentist, also testified for plaintiff. His testimony was that after the accident she had not visited his office until January 26, 1953; that she had then complained of pain in the upper right cuspid and the upper right bicuspid; that she had only nine of her upper teeth and that he had found her infected with periodontal disease of the upper teeth; that at that time he planned to remove only the right cuspid of which plaintiff complained and to supply her with a partial denture; that subsequently he changed his mind about a partial denture and decided to remove the nine teeth and to supply her with a full upper plate; that he did this because of her complaints of pain in the right cuspid and because plaintiff's periodontal disease was causing destruction of the membrane around the remaining teeth; that he disliked partial plates because of his lack of success with them; that with so many upper teeth gone a partial

plate would have been unsuccessful; and that in his opinion there was a causal relationship between the accident and the pain in the upper right area of plaintiff's mouth.

Plaintiff testified that she still suffered pain and discomfiture from the new upper plate and still felt pressure on the right side of her jaw, which had been struck at the time of the accident; that she had experienced pain in her back and abdomen immediately after the accident and still felt pain in the abdomen more or less continuously; that the pain in the upper back had improved but that the lower back and the area in which her kidneys are located still pained her.

Summarizing the testimony as to plaintiff's injuries, other than that of Dr. Casper, it appears that as a result of the accident plaintiff suffered an injury to her upper right cuspid and experienced some pain in her remaining upper teeth; that she suffers discomfort because of the new upper plates and still experiences some pain in the right side of her face; that after the accident she experienced pain in the upper and lower regions of her back and abdomen; that the pain in the upper region of her back has disappeared but that she still experiences pain in the lower region of her back; and that she received a cut and bruise on her face which have healed. There is no testimony that any disabilities described are permanent or will cause any great disability in the future. Plaintiff established special damages at "maybe a little more" than half of Dr. Lommel's bill of $162.

■ We are of the opinion that the verdict of $7,500 for the damages and injuries above described is excessive. There is considerable doubt as to whether the stomach and back pains were due to the accident or were the result of previous surgery. The testimony of Dr. Lommel casts doubt as to whether the accident required the removal of the nine teeth remaining in plaintiff's upper jaw and the installation of a full upper plate in lieu thereof. It appears in all probability that this would have been required in any event because of plaintiff's periodontal disease and because a partial plate would not have given satisfaction.

Whether the large verdict may have been influenced by the extended testimony of Dr. Casper as to plaintiff's kidney, bladder, and back ailments, and as to her enterocele, we cannot say. While it was strick-

en, it still may have had some effect upon the jury, and may in some degree explain the large verdict. Under the circumstances and evidence presented, it is our opinion that, while the verdict may not be the result of passion or prejudice,[1] it is clearly excessive, and that an allowance in excess of $4,000 for plaintiff's injuries and damages cannot be sustained. In this situation, there must be a new trial unless plaintiff consents that the verdict be reduced to $4,000. Cox v. Chicago, R. I. & P. R. Co. 250 Minn. 187, 84 N. W. (2d) 263; Carmody v. Aho, 251 Minn. 19, 86 N. W. (2d) 692.

◼ Defendant asserts that the trial court should have instructed the jury that plaintiff's failure to call Dr. Heinz as a witness militated against her contentions as to injuries. It has been held that an instruction of this kind is largely discretionary with the trial court. Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 212 N. W. 533. We feel that in the instant case the situation was not so extreme as to require an instruction of this kind. The fact that Dr. Heinz had retired from active practice and was beyond the age of 80 years may have prompted the court to deny defendant's request in this respect. We cannot say it abused its discretion in so doing.

◼ Defendant also contends that plaintiff's irrelevant statement, in response to a question of her counsel, that after the accident she had exclaimed "Oh, my back, what has happened" should have been stricken. We do not think that the failure to strike this response constituted material error. Plaintiff's testimony was to the effect that she experienced pain in her back immediately after the accident and the remark complained of would be merely cumulative of a great amount of testimony to such effect on the part of plaintiff. At most, the failure to strike it could be regarded only as harmless error. Rice v. New York Life Ins. Co. 207 Minn. 268, 290 N. W. 798; Massolt v. Minnetonka Casino Co. 103 Minn. 517, 114 N. W. 1132.

◼ Defendant asserts finally that the evidence is insufficient to

---

[1] In Knox v. City of Granite Falls, 245 Minn. 11, 20, 72 N. W. (2d) 67, 74, 53 A. L. R. (2d) 1091, 1101, we stated:

"* * * Notwithstanding the absence of passion or prejudice, trial courts should not hesitate to take appropriate action where the evidence does not justify the amount of a verdict, * * *."

support a finding of negligence on the part of the driver of the car in which plaintiff was a passenger. With this we do not agree. It is undisputed that at the time of the accident there were no automobiles near the car in which plaintiff was riding. The day was clear and the streets dry. There were no distracting circumstances. Had the driver been observant, he would not have failed to note that there were automatic traffic signals at the intersection of University Avenue and Prior Avenue and to be prepared for their operation. When all such factors are considered, it seems clear that the jury might properly conclude that he had failed to keep a proper lookout and failed to keep his car under proper control so as to comply with the requirements of such signals. Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945. It is likewise clear that his failure in these respects was a direct and proximate cause of the accident in which plaintiff sustained her injuries.

Order appealed from is reversed and new trial granted unless within 10 days of filing of remittitur plaintiff shall file written consent that verdict be reduced to $4,000, in which event the order appealed from shall be and is affirmed.