## HAZEL I. SOUKUP AND ANOTHER v. KARON SUMMER.

131 N. W. (2d) 551.

November 20, 1964—No. 39,387.

*Rietz & Rietz,* for appellants.
*Moonan & Senn,* for respondent.

OTIS, JUSTICE.

Hazel I. Soukup sued for personal injuries resulting from a collision between a car driven by her and one operated by defendant, Karon Summer. Joseph E. Soukup sought derivative damages for his wife's injuries as well as compensation for damage to his car. Verdicts were rendered in favor of Mr. Soukup, as bailor of Mrs. Soukup's vehicle, and in favor of defendant with respect to Mrs. Soukup's claim. The jury thus found both drivers negligent. The Soukups appeal from an order denying their motion for judgment notwithstanding the verdict or for a new trial.

■ Appellants assert that the evidence does not support the verdict. The jury could find that on November 8, 1961, at about 4:45 p. m., Mrs. Soukup, hereinafter referred to as plaintiff, was headed in a westerly direction on Southview Street in the city of Owatonna at a speed of about 20 or 25 miles an hour in the lane adjacent to the parked vehicles and that defendant, who was parked on the north

side of the street facing west, started out from the curb and traveled a distance of 6 inches to a foot before her front left bumper and plaintiff's front right bumper collided. Light snowfall had melted on contact with the pavement. Mrs. Soukup did not have her windshield wipers operating. At the scene of the accident plaintiff stated that if she had been more alert she could have avoided hitting the defendant. Under these circumstances we hold that the jury could find plaintiff was negligent in failing to provide sufficient clearance between her vehicle and the parked cars, and in proceeding at a speed which was excessive under the conditions, without maintaining a proper lookout.

■ Appellants assign as error that portion of the charge which suggested the jury could draw an unfavorable inference from the fact Mrs. Soukup invoked her privilege to exclude from evidence records of her prior medical treatment.

Plaintiff testified she suffered continuing pain in her neck and right shoulder as a result of hitting the steering wheel and denied she had previously experienced trouble in that area. More specifically, she denied that as far back as 1951 she had been given injections of cortisone or that she had consulted or conferred with a doctor regarding pain in the right shoulder. Defendant's doctor, who was associated with the Owatonna Clinic, stated that plaintiff had given him a history of prior distress in her right shoulder. By way of further impeachment, defendant offered in evidence the clinic's records concerning Mrs. Soukup's medical history antedating the 1961 accident, including matters relating to the previous treatment given her right shoulder and arm. Thereupon Mrs. Soukup claimed privilege.[1]

The charge to which appellants object is as follows:

"* * * [B]ecause the Court has to determine the law it would be improper for you to speculate upon evidence that the Court has ruled as not being proper. That is true, I expect, in all of the rulings that the Court made in this case except one and that is the ruling that the Court made in connection with the objection of privilege with relation—in respect to and relating to certain medical records. That is a

---

[1]Minn. St. 595.02(4).

privilege which is asserted by the party making the objection at that time. It is one which is imposed on all of us by law and it is a proper objection. However, you are entitled to make such inferences from that objection as you consider are necessary."

The verdict determined the liability issue against the plaintiff. Defendant argues that if there was error in the court's charge it affected only the issue of damages and is now moot.[2] The question is whether the charge on impeachment of plaintiff's credibility as a witness had a more pervasive effect. Plaintiff was sharply and persistently cross-examined about prior disability and treatment in her right shoulder. Manifestly the evidence offered was intended to impeach plaintiff's position that this area had not been previously involved. We are of the opinion that the reference to privilege in the instructions, coupled with the court's charge permitting the jury to disregard all of the testimony of any witness found to have willfully testified falsely to any material fact, may well have affected the issue of liability.

■ The authorities are divided on the question whether it is proper for a court to instruct the jury that it may draw an unfavorable inference from plaintiff's invoking a statutory privilege. At the outset it should be noted that a sharp distinction has been drawn between a "presumption" that medical testimony which is excluded would be unfavorable and an "inference" concerning its effect.[3] The word "presumption" carries with it a suggestion that impeachment may be mandatory, whereas the word "inference" connotes merely a permissive conclusion. A true presumption would shift the burden of going forward with the evidence to the opposing party. We have de-

---

[2]Chase v. Tingdale Brothers, 127 Minn. 401, 403, 149 N. W. 654, 655; Mathwig v. Minneapolis, St. P. & S. S. M. Ry. Co. 145 Minn. 429, 431, 177 N. W. 643, 644; Clark v. Quinn, 203 Minn. 452, 281 N. W. 815; Flaherty v. Minneapolis & St. L. Ry. Co. 251 Minn. 345, 348, 87 N. W. (2d) 633, 635; Wilson v. Home Gas Co. 267 Minn. 162, 166, 125 N. W. (2d) 725, 729; Cook v. Los Angeles Ry. Corp. 169 Cal. 113, 145 P. 1013.

[3]McCormick, Evidence, § 249, p. 535.

clined to give this effect to the privilege in Minnesota. In Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 335, 212 N. W. 533, 534, we held that it was not error for the trial court to refuse the following requested charge:

"* * * [P]laintiff's failure to call these physicians as witnesses permitted the jury 'to indulge in the presumption that the testimony of the attending physicians if introduced would not have been favorable to * * * plaintiff's contention as to the nature and extent of the injuries he alleges resulted by reason of said accident.' "

We stated (170 Minn. 337, 212 N. W. 534):

"* * * An instruction to the jury involving presumptions is frequently more harmful than helpful."

By way of dictum, Dubois v. Clark, 253 Minn. 556, 559, 93 N. W. (2d) 533, 536, noted that a similar charge respecting the absence of a presumption in failing to call a doctor was not erroneous. Where a guardian invoked a privilege for a ward, we approved an instruction which advised the jury that plaintiff's objection to the evidence "should have no bearing as far as the decision of this lawsuit is concerned. That evidence was excluded by authority of law * * * and it was the duty of the guardian to look after the interests of his ward." Sanne v. Metropolitan Life Ins. Co. 218 Minn. 181, 188, 15 N. W. (2d) 524, 528.

The whole subject of medical privilege was exhaustively considered in Nelson v. Ackermann, 249 Minn. 582, 590, 83 N. W. (2d) 500, 506. There, *by consent of the parties,* the court charged:

"* * * The failure to call these doctors does not allow you to presume or to infer that the testimony of these doctors would have been unfavorable to the plaintiffs."

The immediate question was whether it was proper to require the plaintiff to assert the privilege in the presence of the jury and to permit defendant's counsel to argue the inferences. In affirming the trial court on both matters, we expressed our attitude as follows (249 Minn. 591, 597, 83 N. W. [2d] 506, 510):

"There probably is no privilege in the field of evidence so abused as the physician-patient privilege. This privilege did not exist under the common law. * * *

* * * * *

"Instead of accomplishing the purpose for which it was originally intended, the privilege has been so far corrupted today that it is used, at least in personal injury cases, for the most part for suppression of the truth. * * *

* * * * *

"* * * Throughout the years the privilege has been converted into a strategic device for the exclusion of evidence apt to be harmful to the case of the party having control of the evidence. * * *

"* * * How far shall the courts go in protecting an unfair advantage procured by one party to a lawsuit against his adversary by virtue of the privilege where plaintiff sues to recover for personal injuries and at the same time asserts the privilege which, theoretically at least, will keep secret the very injuries for which he seeks to recover damages? Under these circumstances, shall the court permit the jury to infer, if it chooses to do so, that his adversary was responsible for not producing the attending physician, or is it more in line with the administration of justice to put the blame where it belongs—on the party asserting the privilege? * * *

* * * * *

"* * * [C]an the facts learned by the doctor be kept a secret when plaintiff sues to recover for the very injuries he claims a right to keep secret? * * * As far as the statute gives him a right to close the mouth of the doctor we cannot interfere. And as long as the privilege is asserted for the purpose for which it was created, it should be given full respect. But when it is asserted for the sole purpose of gaining a strategic advantage over an opponent and accomplishes nothing pertinent to the purpose for which it was created, it should not be further extended by judicial decision."

We concluded by distinguishing between the impropriety of drawing inferences from *incompetent* evidence which has been excluded and

the propriety of drawing inferences from the exclusion of *competent* evidence. In the instant case, the trial court attempted to enlighten the jury with respect to this distinction. The language it used was innocuous. In our opinion it was proper.

Both attorneys had argued the inference in summing up. If it is not the law that a jury may draw an unfavorable inference from the invoking of the medical privilege, certainly we should not permit counsel to invite them to reach that conclusion. If, on the other hand, it is proper for counsel to thus argue, and we have held that it is, it would be utterly incongruous to hold that the trial court may not advise the jury that the law permits the very inference we allow counsel to urge on them.

In this state we have adopted the rule that a foundation must be laid by first determining whether plaintiff intends to assert the privilege. Where it is waived, the evidence is equally available to both parties, and it would appear doubtful whether an adverse inference under such circumstances can properly be drawn.[4]

Wigmore makes the distinction between a permissible inference which may be drawn from failing to call a doctor as one's own witness and a rule which prohibits an unfavorable inference when the privilege is claimed after the medical witness has been presented for examination by the patient's adversary.[5]

However, we are of the opinion that there is less justification for drawing an unfavorable inference where it is not known until the privilege is invoked whether or not the medical witness may be equally available to both parties. McCormick deplores the abuses stemming from the medical privilege and predicts its ultimate erosion. He advocates that the charge be discretionary, and we have expressed con-

---

[4]Kmetz v. Johnson, 261 Minn. 395, 401, 113 N. W. (2d) 96, 100; 47 Minn. L. Rev. 294; Dubois v. Clark, 253 Minn. 556, 560, note 1, 93 N. W. (2d) 533, 536, note 1.

[5]New York Life Ins. Co. v. Newman, 311 Mich. 368, 373, 18 N. W. (2d) 859, 861; Howard v. Porter, 240 Iowa 153, 35 N. W. (2d) 837; Sumpter v. National Grocery Co. 194 Wash. 598, 78 P. (2d) 1087, 116 A. L. R. 1166; 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2386.

currence in this approach. Gross v. Hoag, 251 Minn. 217, 87 N. W. (2d) 542.[6] We now hold that it is a matter of judicial discretion with the trial judge, who is in a position to protect the witness in instances where the true purpose of the medical privilege will be fulfilled by the suppression of irrelevant testimony, but at the same time when necessary can mitigate the harm which results from withholding material information about a patient's condition directly bearing on the claim being litigated.[7]

It is noteworthy that the American Law Institute's Committee on Evidence, consisting of distinguished scholars and judges such as Edmund M. Morgan, Wilbur H. Cherry, Augustus N. Hand, and Learned Hand, with John H. Wigmore acting as chief consultant, in adopting a model code of evidence, treats with the subject as follows (A. L. I., Model Code of Evidence, Rule 233):

"If a privilege to refuse to disclose, or a privilege to prevent another from disclosing, a matter is claimed and allowed, the judge and counsel may comment thereon, and the trier of fact may draw all reasonable inferences therefrom."

A number of highly respected jurisdictions have condoned unfavorable inferences drawn from failure to produce available medical testimony.[8] Some have expressly permitted counsel and the court to refer to the inference which may be drawn from the exclusion of competent testimony under a privilege. In dealing with an attorney-client privilege,

---

[6]Cf. Connolly v. The Nicollet Hotel, 258 Minn. 405, 416, 104 N. W. (2d) 721, 730.

[7]McCormick, Evidence, §§ 81, 108.

[8]Burch v. Reading Co. (E. D. Pa.) 140 F. Supp. 136, 164; Blackstone v. Osche (W. D. Pa.) 192 F. Supp. 174, 176; Ferne v. Chadderton, 363 Pa. 191, 198, 69 A. (2d) 104, 108; Secondino v. New Haven Gas Co. 147 Conn. 672, 674, 165 A. (2d) 598, 600; Fenstermaker v. Bodamer, 195 Pa. Super. 436, 171 A. (2d) 641; Pawlowski v. Marino, 71 N. J. Super. 120, 176 A. (2d) 488; Keener v. Fidelity & Cas. Co. (La. App.) 96 So. (2d) 509; Peoria Life Ins. Co. v. Smith (E. D. Mich.) 47 F. (2d) 279; Beardsley v. Suburban Coach Co. Inc. 83 Ga. App. 381, 390, 63 S. E. (2d) 911, 918; O'Connor v. City of Detroit, 160 Mich. 193, 125 N. W. 277; Dodge v. Dobson, 21 Wis. (2d) 200, 124 N. W. (2d) 97.

the Massachusetts court stated in Phillips v. Chase, 201 Mass. 444, 450, 87 N. E. 755, 758:

"* * * [I]f evidence is material and competent except for a personal privilege of one of the parties to have it excluded under the law, his claim of the privilege may be referred to in argument and considered by the jury, as indicating his opinion that the evidence, if received, would be prejudicial to him."

In applying the rule to a medical exclusion, a New York court has given weight to the fact that the legislature expressly prohibited reference to defendant's failure to take the witness stand in a criminal case but imposed no such restriction as to other privileged testimony. Deutschmann v. Third Ave. R. Co. 87 App. Div. 503, 513, 84 N. Y. S. 887, 895. That argument has equal force under Minnesota law. Minn. St. 611.11 and 595.02(4).

The Michigan court[9] has approved the following charge which contained language somewhat similar to that used by the lower court in this case:

"* * * The testimony is, he consulted one regular doctor, one chiropractor, and one osteopath. He has not brought any of those men here. The fact that he has not brought them here may be taken into consideration by you in determining whether or not he is injured and the extent of the injury. He has testified he consulted those men about his injury. And *you may give the fact that he has failed to bring those people here such weight as you believe, under the circumstances of the case, it is entitled to.*" (Italics supplied.)

In the instant case the court told the jury, "* * * [Y]ou are entitled to make such inferences from that objection as you consider are necessary." In neither case did the judge expressly invite an unfavorable inference. More recently the Michigan rule concerning privilege has been limited by statute and now provides that a patient is deemed to have waived the privilege with respect to all attending physicians who are not produced at the trial if he produces any one of them as a

---

[9] Heck v. Henne, 238 Mich. 198, 203, 213 N. W. 112, 114.

witness. Mich. Stat. Ann. 1962 Rev. § 27A.2157; DeGroff v. Clark, 358 Mich. 274, 276, 100 N. W. (2d) 214, 216.

The arguments for and against permitting a charge on the right to draw unfavorable inferences from invoking a medical privilege are thoroughly discussed in Killings v. Metropolitan Life Ins. Co. 187 Miss. 265, 192 So. 577, 131 A. L. R. 684. The court there resolved conflicting decisions in its own jurisdiction by holding such an instruction to be justified. The court observed that it was obliged under the statute to give effect to the privilege, but went on to say that where a court by close observation determines that a rule or statute leads to injustice, it has a duty to minimize the application of the rule. We concur in this conclusion. We cannot abrogate the statutory privilege by judicial construction, but to the extent its invocation is abused and results in concealment of competent evidence it becomes our prerogative and obligation to resort to other well-established rules of procedure which will temper its impact in particular situations.

Applying these principles to the case at hand, it was plaintiff's claim that she sustained injury to her right shoulder as a result of the accident. She categorically denied she had ever had any previous difficulty in that area. Defendant attempted to introduce plaintiff's medical records to show the treatment of her shoulder and arm prior to the accident. By exercising her privilege, plaintiff sought to prevent the jury from discovering the facts concerning the very issue it was impaneled to decide—whether the disability for which she sued was occasioned by this accident. Where the privilege statute is thus invoked to suppress evidence which is competent and pertinent, we are not moved to add our blessings by denying the trial court the right to comment on the implications.

Accordingly, we hold that in the exercise of its sound discretion it was proper for the court to give the charge complained of.

Affirmed.